**REESE LLP**
Michael R. Reese (Cal. State Bar No. 206773)
Sue J. Nam (Cal. State Bar No. 206729)
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone:  (212) 643-0500
Email:  *mreese@reesellp.com*
        *snam@reesellp.com*

**REESE LLP**
George V. Granade (Cal. State Bar No. 316050)
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone:  (310) 393-0070
Email:  *ggranade@reesellp.com*

**THE LAW OFFICE OF DAVID C. DEAL, P.L.C.**
David C. Deal (to be admitted *pro hac vice*)
P.O. Box 1042
Crozet, Virginia 22932
Telephone: (434) 233-2727
Counsel for Plaintiff

*Attorneys for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLAINE HARRINGTON III, on behalf of himself and all others similarly situated,<br><br>                              Plaintiff,<br><br>    vs.<br><br>PINTEREST, INC.<br><br>                        Defendant | Civil Case No.: 20-cv-5290<br><br>**CLASS ACTION COMPLAINT**<br><br>(1) Copyright Infringement, 17 U.S.C. § 101 *et seq.*;<br>(2) Contributory Copyright Infringement, 17 U.S.C. § 101 *et seq.*<br>(3) Violation of the DMCA, 17 U.S.C. § 1202(b)<br><br>**<u>Demand for Jury Trial</u>** |

Plaintiff Blaine Harrington III ("Plaintiff"), individually and on behalf of all others similarly situated (the "Classes," as defined below), brings this Class Action Complaint against Pinterest, Inc. ("Pinterest" or "Defendant") and respectfully alleges as follows. Plaintiff bases the allegations herein on personal knowledge as to matters related to, and known to, him. As to all other matters, he bases his allegations on information and belief, through investigation of his counsel. Plaintiff believes substantial evidentiary support exists for his allegations, and he seeks a reasonable opportunity for discovery.

## **INTRODUCTION**

1. Pinterest was founded in 2008 and has quickly grown to be one of the largest social media platforms in the world with 416 million monthly users worldwide. *See* Pinterest Form 10 Q for the quarterly period ending June 30, 2020, available at https://d18rn0p25nwr6d.cloudfront.net/CIK-0001506293/f25eb9d3-f22d-48cc-b817-eff696f694a0.pdf, at 22. Pinterest bills itself a "visual discovery engine that people around the globe use to find the inspiration to create a life they love." *Id.*, at 12.

2. Like many successful social media companies, Pinterest is both Dr. Jekyll and Mr. Hyde. On the one hand, Pinterest has become a wildly popular social media site and mobile application by allowing its users or "Pinners" to freely create and share virtual image boards. On the other hand, Pinterest monetizes the images "pinned" by its users to the detriment of federally registered image owners like Plaintiff.

3. Although "Pinners" and advertisers may love Pinterest, it is the bane of copyright owners whose federally registered images are misused by and through Pinterest.

4. By providing a mechanism for people to easily "pin" images from the internet, including the registered copyrighted works of people like Plaintiff, Pinterest collects, stores, sorts, manipulates, distributes, and displays the billions of images that its users "pin."

5. Pinterest depends on the constant "pinning" of images by users, with little regard for the source or the rights of the owners of those images, because the foundation of Pinterest's business is the billions of high quality images, not one of them paid for by Pinterest.

6.      Pinterest monetizes those images – often without the identifying source of those images and certainly without authorization or compensation to the copyright holders of those images – by displaying and distributing those images to its users, which are incorporated with targeted advertisement. Moreover, the enormous volume of images that are "pinned" by users is the data that feeds Pinterest's artificial intelligence used to generate advertisement revenues for Pinterest. The more images that are "pinned," the more Pinterest can use those images to make its websites and app more personalized and "sticky" to users, thereby making its paid advertisement more effective and more valuable.

7.      The result is often the grotesque misuse of artistic works to peddle products in a manner to which the copyright owner has never and would never consent. For example, Plaintiff's image of indigenous people is used by Pinterest to advertise bras. And this is just the tip of the iceberg, as a review of Pinterest's websites reveals thousands upon thousands of federally copyrighted images used by Pinterest to hawk goods and services.

8.      Pinterest directly and contributorily infringed, and continues to infringe, the copyrights of Plaintiff and other similarly situated owners of federally registered copyrights.

9.      Plaintiff certainly is not the only registered copyright owner who has been harmed by Pinterest's misconduct. There are numerous articles and posts discussing the rampant copyright infringement by and through Pinterest. *See*, *e.g.*, "*Pinterest – Copyright Infringement Made Cool*," available at https://photographylife.com/pinterest-copyright-infringement-made-cool; "*Is Pinterest a Copyright Infringement Masterpiece*," available at https://creativefuture.org/pinterest/; "*Is Pinterest a Haven for Copyright Violations?*," available at https://turbofuture.com/internet/Is-Pinterest-a-Haven-for-Copyright-Violations; "*Pinterest.com and Copyright,*" available at https://www.seanlockephotography.com/2012/01/26/pinterest-com-and-copyright/; "*What do Harold Davis and Georgia O'Keeffe have in common on Pinterest, and how is Pinterest going to make money, anyway?,*" available at https://www.digitalfieldguide.com/blog/12572.

10.      Photographers, visual artists, and other owners of federally registered copyrights are damaged by having their images commercialized without consent by and through Pinterest.

1    The unauthorized use by and through Pinterest negatively impacts the value of the federally
2    registered images, which were registered by the owners of the images because they expressly
3    wish to protect their images to the fullest extent of the law.

4        11.    This putative class action seeks to remedy the harm that Pinterest has caused to
5    Plaintiff and other owners of federally registered copyrights by its unlawful acts. This action
6    seeks actual or statutory damages and injunctive relief for direct and contributory infringement
7    under the Copyright Act of the United States, 17 U.S.C. § 101 et seq. (the "Copyright Act") and
8    actual or statutory damages and injunctive relief for violation of the Digital Millennial Copyright
9    Act (the "DMCA"), 17 U.S.C. § 1202(b).

10                              **PARTIES**

11       A.    **Plaintiff Blaine Harrington III**

12       12.    Plaintiff Blaine Harrington III is a resident of Littleton, Colorado.

13       13.    Mr. Harrington is a renowned and award-winning professional travel
14   photographer. He is a three time SATW Travel Photographer of the Year (2005, 2006, 2019),
15   and has been awarded prizes in other major photography competitions. He has worked on
16   assignment for most major news, business and travel magazines, including *Business Week, Delta
17   Sky, Endless Vacation, Forbes, Geo, Islands, National Geographic Adventure, National
18   Geographic Traveler, Newsweek, New York Times* magazine**,** *Outside, Popular Photography,
19   Ski, Smithsonian, Time, Travel + Leisure.* Mr. Harrington's images have been licensed by U.S.
20   textbook publishers and encyclopedias; National Geographic and Time-Life books; and travel
21   guides including *Fodor's*, *Frommer's*, *Insight Guides*, *Moon Guides*, *Real Guide*, and *Rick
22   Steves*. Mr. Harrington also has been engaged by corporate clients, including Abercrombie &
23   Kent, Boundless Journeys, Backroads, Coldwater Creek, European Travel Commission, Fuji
24   Photo Film USA, Globus, Grand Circle Travel, Holland America, Mountain Travel-Sobek,
25   Nikon, Overseas Adventure Travel, Tauck, The Territory Ahead, Travel Smith, and Wilderness
26   Travel**.**

27       14.    Mr. Harrington makes his living from the sale and licensing of his photographs.
28   Mr. Harrington federally registers his photographic images.

15. Mr. Harrington is, and at all relevant times has been, the sole copyright owner of his photographic works (his "Works"), including but not limited to those listed in Exhibit A. Plaintiff's Works are the subject of valid and complete Certificates of Copyright Registration issued by the United States Copyright Office.

16. Mr. Harrington's Works are highly desired by collectors and licensees but also the target of unauthorized copying. Because of the frequent theft of his Works, especially on the internet, Mr. Harrington has devoted significant time and resources in monitoring the improper use of his Works. Mr. Harrington uses Pixsy (www.pixsy.com), an online platform for image owners to discover where and how their images are being used online. Mr. Harrington also hires attorneys to send cease-and-desist letters and initiate actions against copyright infringers.

**B.      Defendant Pinterest**

17. Pinterest is a for-profit Delaware corporation with headquarters in San Francisco, California.

18. Pinterest owns, operates, and is solely responsible for the content of its websites worldwide, including but not limited to www.pinterest.com, www.pinterest.ca, www.pinterest.mx, www.pinterest.uk, www.pinterest.com.au, www.pinterest.de, www.pinterest.jp, www.pinterest.fr, www.pinterest.it, www.pinterest.es, and the Pinterest mobile application ("app").

**JURISDICTION AND VENUE**

19. The Court has original subject matter jurisdiction over copyright claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a).

20. This Court also has original subject matter jurisdiction over this proposed class action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of Title 28 of the United States Code), under 28 U.S.C. § 1332(d), which provides for the original jurisdiction of the federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and [that] is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). Because Plaintiff seeks to

represent a nationwide class, at least one member of the plaintiff class is a citizen of a State different from Defendant. Furthermore, Plaintiff alleges the matter in controversy is well in excess of $5,000,000 in the aggregate, exclusive of interest and costs. Finally, Plaintiff alleges "the number of members of all proposed plaintiff classes in the aggregate" is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B).

21.     This Court has personal jurisdiction over Defendant because the events giving rise to the claims occurred in this District, Defendant engaged in infringement in this District, Defendant resides in this District, and Defendant is subject to personal jurisdiction in this District.

22.     Venue in this District is proper under 28 U.S.C. § 1391(b) in that a substantial part of the events giving rise to the within claims occurred in this judicial district, and under 28 U.S.C. § 1400(b) in that it is a judicial district where Defendant has committed acts of copyright infringement and had a regular and established place of business.

## ALLEGATIONS COMMON TO ALL CLAIMS

23.     Pinterest, through its websites and app, allows its users to create and share virtual bulletin boards, or "boards," to which they have posted, or "pinned," items that have been uploaded. Users can have multiple boards for various topics or themes. Users can browse, like, and comment on each other's Boards and Pins, and "re-pin" each other's content. *See* https://help.pinterest.com/en/guide/all-about-pinterest. Although Pinterest characterizes "pins" as "bookmarks that people use to save ideas they love on Pinterest," *id.*, Pinterest is primarily an image-based platform. Thus, the vast majority of "pinned" items are images, whether still or moving, uploaded from the internet.

24.     A user's main Pinterest page is a "home feed." The Pins in a user's home feed are not simply those that the user has selected. Instead, Pinterest displays other Pins from a library of images "pinned" by users, which Pinterest collects, stores and maintains. Pinterest's library of images is estimated to be in the billions. The images that Pinterest displays to the user are personalized based on that user's boards, recent activity on Pinterest, and favorite topics.

Importantly, the images that users see on their home feed are integrated with advertisements designed to appear similar or along the same theme to the users' Pins.

25.     Pinterest generates its revenue with these advertisements. *See* Pinterest Form 10 Q for the quarterly period ending June 30, 2020, available at https://d18rn0p25nwr6d.cloudfront.net/CIK-0001506293/f25eb9d3-f22d-48cc-b817-eff696f694a0.pdf, at 12 ("We generate revenue by delivering ads on our website and mobile application.). In just the second quarter of 2020, Pinterest generated approximately $272 million in ad revenue. *Id.* at 7.

26.     Pinterest uses its library of images to entice users to interact with its websites and app, including by distributing the images directly to the user by email and/or through the Pinterest app. Pinterest seamlessly integrates advertisement into the various "pinned" images that it displays, so that the images are part of the targeted advertisement campaign.



**Image 1** (Pinterest user's screen shot with advertisements circled).

**A.**     <u>**Pinterest's Improper Use of Registered Copyrighted Images to Generate Advertisement Revenue**</u>

27.     Although Pinterest employs a highly sophisticated system for identifying and cataloguing "pinned" images, Pinterest does not have in place a system of screening the Pins for copyright notices or other indicia of copyright ownership associated with the "pinned" images.

28.     The result is the blatant misuse by Pinterest of federally registered images to provide targeted advertisement.

29.     Plaintiff's Works have been displayed without his consent by Pinterest to advertise a wide range of goods and services.



**Image 2.**

30.     As seen in the above Pinterest user's screen shot, Plaintiff's "Prayer flags on Dochu La (pass) between the Thimphu and Punakha Valleys, Bhutan," listed as Copyrighted Work No. 1 on Exhibit A, (indicated by "A" arrow), was originally "pinned" by "Birgit Fischer" and saved to the "Bhutan-Königreigh im Himmel" board (circled). Pinterest then copied and

distributed Plaintiff's copyrighted image to other Pinterest users to advertise cheap airline tickets from WikiBuy (circled on bottom left) and financial services from Wesley Financial Group (circled on bottom right).

31.     Pinterest also displayed Plaintiff's other Works without attribution. In the above screen shot (Image 2), the following Works are displayed:

- "St. Magdalena, Dolomites, Italy," listed as Copyrighted Work No. 2 on Exhibit A (indicated by "B" arrow)
- "Jackson Lake, Grand Teton National Park, Wyoming USA," listed as Copyrighted Work No. 3 on Exhibit A (indicated by "C" arrow)
- "Shikara, Dal Lake, Srinagar, Kashmir, India," listed as Copyrighted Work No. 4 on Exhibit A (indicated by "D" arrow)
- "Golden Gate Bridge, San Francisco, California, USA," listed as Copyrighted Work No. 5 on Exhibit A (indicated by "E" arrow)
- "Shalimar Bagh, Kashmir, India," listed as Copyrighted Work No. 6 on Exhibit A (indicated by "F" arrow)
- "Pienza, Tuscany, Italy," listed as Copyrighted Work No. 7 on Exhibit A (indicated by "G" arrow)
- "A shikara (boat) on Dal Lake in Srinagar, Kashmir, Jammu and Kashmir State, India," listed as Copyrighted Work No. 8 on Exhibit A (indicated by "H" arrow)
- "Feluccas on Nile River, Aswan, Egypt," listed as Copyrighted Work No. 9 on Exhibit A (indicated by "me" arrow)
- "Saxman totem poles (largest collection of totem poles in the world), Saxman near Ketchikan, Southeast Alaska USA," listed as Copyrighted Work No. 10 on Exhibit A (indicated by "J" arrow)
- "Vineyards, Millar Road Winery, New Zealand," listed as Copyrighted Work No. 11 on Exhibit A (indicated by "K" arrow)
- "Road near Mittenwald, Bavaria, Germany," listed as Copyrighted Work No. 12 on Exhibit A (indicated by "L" arrow)
- "Kula Highway, Maui, Hawaii," listed as Copyrighted Work No. 13 on Exhibit A (indicated by "M" arrow)
- "Man on camel, Nubian village near Aswan, Egypt," listed as Copyrighted Work No. 14 on Exhibit A (indicated by "N" arrow)
- "Market, Old Leh, Ladakh, India," listed as Copyrighted Work No. 15 on Exhibit A (indicated by "O" arrow)
- "Nubian village near Aswan, Egypt," listed as Copyrighted Work No. 16 on Exhibit A (indicated by "P" arrow)
- "Aerial view of balloons flying at Albuquerque Balloon Fiesta," listed as Copyrighted Work No. 17 on Exhibit A (indicated by "Q" arrow)
- "Paro Festival, Bhutan," listed as Copyrighted Work No. 18 on Exhibit A (indicated by "R" arrow)
- "Castle of Chillon, Montreux, Switzerland," listed as Copyrighted Work No. 19 on Exhibit A (indicated by "S" arrow)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

32.    Pinterest displayed Plaintiff's Works in connection with advertisement for a variety of other products and services.



**Image 3** (advertisements by Marriot Bonvoy, Wikibuy, and Zox circled).

33.    In the above Pinterest user's screen shot, Pinterest displayed Mr. Harrington's "A shikara (boat) on Dal Lake in Srinagar, Kashmir, Jammu and Kashmir State, India," listed as Copyrighted Work No. 8 on Exhibit A (indicated by "A" arrow), on its website to display advertisements by Marriot Bonvoy (hotel chain), Wikibuy (an internet shopping site), and Zox (wristband retailer). Pinterest also displayed "Boat with flowers, Dal Lake, Kashmir, India," listed as Copyrighted Work No. 20 on Exhibit A (indicated by "B" arrow) without attribution.

CLASS ACTION COMPLAINT



**Image 4** (advertisements by Vrbo, National Geographic, and Wikibuy circled.

34.     In the above Pinterest user's screen shot, Pinterest displayed Mr. Harrington's "Shalimar Bagh (a Mughal Garden), near Srinagar, Kashmir, Jammu and Kashmir State, India," listed as Copyrighted Work No. 21 on Exhibit A (indicated by "A" arrow), on its website to display advertisements by Vrbo (home rental company), National Geographic (a magazine), and Wikibuy (an internet shopping site). Pinterest also displayed "Shalimar Bagh, Kashmir, India," listed as Copyrighted Work No. 22 on Exhibit A Work (indicated by "B" arrow), without attribution.

35.     Pinterest's artificial intelligence displays images that it associates with Mr. Harrington's photograph, which can result in Pinterest displaying an offensive and reductive collection of images.

36.     In the below Pinterest user's screen shot, Pinterest displayed Mr. Harrington's "Kara Tribe Boys with Boy Chalk Paintings On Their Bodies Jump In the Air, With Omo River Behind, Dus Village, Omo Valley, Ethiopia," listed as Copyrighted Work No. 23 on Exhibit A, on its website, then displayed a collection of images supposedly "More like this."



CLASS ACTION COMPLAINT

**Image 5** (advertisements by NordicTrack, Inpixio, Buzznet, Ancestry, AT&T, and Jungole circled).

37.     A number of Mr. Harrington's other Works are displayed in the above screen shot (Image 5), including:

- "Nubian village near Aswan, Egypt," listed as Copyrighted Work No. 16 on Exhibit A.
- "3 Indian men, Jodhpur, India," listed as Copyrighted Work No. 24 on Exhibit A.
- "Yoga at Red Rocks, Morrison, Colorado, USA," listed as Copyrighted Work No. 25 on Exhibit A.
- "Egyptian girls, Cairo, Egypt," listed as Copyrighted Work No. 26 on Exhibit A.
- "Paro Festival, Bhutan," listed as Copyrighted Work No. 18 on Exhibit A.
- "Group of Nepalese children, Durbar Square, Patan, Nepal," listed as Copyrighted Work No. 27 on Exhibit A.
- "Embera Indian women, Panama," listed as Copyrighted Work No. 28 on Exhibit A.
- "Shikara boat, Dal Lake, Kashmir, India," listed as Copyrighted Work No. 29 on Exhibit A.
- "Market, Old Leh, Ladakh, India," listed as Copyrighted Work No. 15 on Exhibit A.
- "Bishnoi tribe, Rohat, India," listed as Copyrighted Work No. 30 on Exhibit A.
- "Rice terraces, near Sapa, Vietnam," listed as Copyrighted Work No. 31 on Exhibit A.
- "Maasai men, Amboseli National Park, Kenya," listed as Copyrighted Work No. 32 on Exhibit A.
- "Novice monk reading, Inwa, Burma," listed as Copyrighted Work No. 33 on Exhibit A.

38.     Interspersed among Plaintiff's Works are other images of native peoples and advertisements of various goods and services, including NordicTrack (a fitness equipment retailer), Inpixio (photo software, featuring images of women in bikinis), Buzznet (media site,

featuring an article about "Crazy Hygene Habits During the Wild West), Ancestry (online family history resource), and AT&T.

39.     One of the more egregious examples of commercial exploitation is the circled advertisement for Jungole's "hands' free" terrycloth "bra," which inadvertently triggers the trope of the topless native.

40.     The video on the Pinterest webpage includes the following images:

 

**Image 6**.

41.     Pinterest's artificial intelligence replicates and even exaggerates the biases of its users, whether innocuous or harmful, then commercializes them.

42.     Plaintiff did not authorize his Works to be used to advertise any of these products.

43.     Such unauthorized, commercial use of federally registered images debase the value and integrity of Plaintiff's Works and the federally registered images of people similarly situated to Plaintiff.

44.     Regardless of whether the initial "pinning" of an image by a user was fair use, Pinterest's use of that same image for advertisement campaigns is not. Moreover, there is

1   nothing passive about how Pinterest stores, manipulates, manages, and uses those protected

2   images.

3       45.     Pinterest itself copies, stores, distributes, and displays the protected images to

4   generate ad revenue, not simply upon instigation by its users.

5       46.     Pinterest actively sends federally registered images via email or through its app to

6   entice users to interact with its websites and view its paid advertisements, and it displays

7   protected images on user's feeds along with paid advertisement.

8       47.     The following is an example of an email that Pinterest sent on July 25, 2020,

9   displaying Plaintiff's federally registered work, "Waikiki Beach, Honolulu, Oahu, Hawaii,

10  USA," listed as Copyrighted Work No. 34 on Exhibit A.

11

12  

13

14

15

16

17

18

19

20

21  **Image 7** (Plaintiff's Work circled).

22      48.     As a result, Pinterest does not qualify for protection from copyright infringement

23  under the DMCA because Pinterest initiates the copying and distribution of federally registered

24  images.

25      B.      **Pinterest's Removal of Copyright Management Information and Other**
                **Identifying Information**

26      49.     Although Pinterest may claim that it merely hyperlinks images or frames

27  hyperlinked imaged, as they exist on the internet, this simply is not true.

28

50.     Pinterest often displays images with no information regarding who originally "pinned" it or from what website. And Pinterest often displays images of Plaintiff's Works that do not link back to any live website, let alone Plaintiff's website.

51.     In using pinned images for advertisement, Pinterest deliberately strips the images of their metadata, identifying source and/or copyright management information ("CMI").

52.     As seen in a Pinterest user's screen shot below, the original "pinned" image links back to Plaintiff's website and contains Plaintiff's CMI.



**Image 8** (Plaintiff's CMI circled).

53.     Pinterest, however, removed the CMI from the pinned image when Pinterest displayed that same image in other contexts. *See* Image 9 below (Pinterest user's screen shot with Plaintiff's Work circled, indicated by "A" arrow).

**Image 9**.

54.     Pinterest knowingly removes the CMI to induce, enable, facilitate, or conceal its direct and/or contributory infringement of copyright images. Pinterest strips the CMI when it uses "pinned" images for targeted advertisement. Removing the CMI and the identifying source of images is Pinterest's modus operandi. *See also* Images 2-4, and 7, herein, displaying Plaintiff's Works without their CMI.

55.     By removing the CMI and identifiable sources from the "pinned" images, Pinterest ensures that users will focus more on the paid advertisement. The paid advertisement contains identifying tags and live links, which makes the paid advertisement stand out among Pinterest's use of stripped, often static "pinned" images.

**C.     Pinterest Materially Contributes to the Copyright Infringement by Third Parties**

56.     Pinterest has developed highly sophisticated methods to identify and catalogue the vast trove of "pinned" images that it stores and manages. *See*, *e.g.*, https://medium.com/pinterest-engineering.

57.     Pinterest allows its users to search its library of images then to download the image with a click of a button.

58.     Plaintiff's Works include "Casa Rondena Winery, Los Ranchos de Albuquerque (metro Albuquerque), New Mexico USA," listed as Copyrighted Work No. 35 on Exhibit A.

59.     As seen in a Pinterest's user's screen shot below, this Work was "pinned" by a Pinterest user, "Ruthann Beeler Sturgill," to her "Albuquerque" board.



**Image 10**.

60.     As result, the "pinned" image became part of Pinterest's library of images, which then is searchable. As seen below, Plaintiff's Work appears as part of a search result.



**Image 11** (Plaintiff's work circled).

61.     When the user clicks on the image, the user is given the easy option of downloading that image by clicking on the "…" symbol, which pulls up the option to download the photo as a JPEG.



**Image 12** (downloading option circled).

62.     Pinterest's app similarly makes downloading an image exceedingly easy. Simply clicking on an image on the app brings up a toolbar with the option to download the image onto one's smartphone.

-19-

63.     With respect to many images, including Plaintiff's, Pinterest also provides, again with a click of a button, the ability to "Get Pin embed code." A user can then copy and paste this embed code into his or her own webpage and display that same image on the user's web page. Pinterest's embed code uses the nomenclature "assets.pinterest.com."



**Image 13** ("Get Pin embed code" option circled).

64.     As a result of the copying tools Pinterest provides, Pinterest is the source of rampant infringement by third parties of registered works. Pinterest deliberately obscures the fact that many of the images on Pinterest's websites and app are proprietary and protected.

65.     Pinterest is aware that its websites and app are used by third parties to infringe registered copyrights.

66.     Although Pinterest could implement reasonable and feasible means to remove federally registered materials from its library of images, it does not.

67.     Pinterest has built its business on its ability to organize and categorize images. It has developed robust technology to make its library of "pinned" images searchable both by words and images. Pinterest explains.

CLASS ACTION COMPLAINT

**Search**
You can search for Pins, boards, people or hashtags in the search bar. We'll also show you ideas for you and trending ideas to spark some inspiration. If you're not quite sure what you're looking for, try typing in something general ("dinner ideas"), then use Pinterest's built-in search guides (like "healthy" or "for kids") to narrow down your results. If you're on your phone, try tapping the camera icon next to the search bar to do a visual search for related ideas.

https://help.pinterest.com/en/article/discover-ideas-on-pinterest

68.     Pinterest thus could easily search Pins for CMI. Pinterest also could ensure, at a minimum, that its users are not permitted to download or embed the copyrighted images without clicking a notice or otherwise acknowledging that the image may only be copied, downloaded, or embedded for the user's personal, non-commercial, or educational purposes.

69.     Instead, Pinterest provides what amounts to a library of laundered images, stripped of their identifying source and CMI, to Pinterest users to copy, download and/or embed for commercial use.

70.     The following is an example of Plaintiff's "Casa Rondena Winery, Los Ranchos de Albuquerque (metro Albuquerque), New Mexico USA," that is available on Pinterest and improperly copied for commercial use.



**Image 14.**

71.     Plaintiff successfully removed this unauthorized use on the internet by engaging an attorney and making a cease and desist demand.

72.     Yet another example of Plaintiff's Work that is "pinned" on Pinterest is "Hot air balloons flying at sunrise (with the Sandia Mountains in the background), Albuquerque International Balloon Fiesta, Albuquerque, New Mexico USA," listed as Copyrighted Work No. 36 on Exhibit A. As seen below, this Work was "pinned" and used by "golocalboom.com" on Pinterest without permission for a commercial use.

**CLASS ACTION COMPLAINT**



**Image 15.**

73.     This work also was improperly copied for commercial use on the internet by Aerogelic Ballooning as seen below.

74.     Plaintiff successfully removed this unauthorized use by engaging an attorney and making a cease and desist demand.

CLASS ACTION COMPLAINT



**Image 16.**

75.     There are thousands of Plaintiff's Works displayed on Pinterest's website and app by third parties and by Pinterest without authorization and for improper purposes. Plaintiff's Works appear in connection with the following geographic subjects found on Pinterest: Argentina, Australia, Belgium, Bermuda, Bhutan, Burma (or Myanmar), Botswana, Brazil, Canada (including provinces such as British Columbia, Manitoba, Nova Scotia, Prince Edward Island), Chile, China, Costa Rica, Curacao, the Czech Republic, Dubai, Egypt, England, Ethiopia, Fiji, French Polynesia, Germany, Greece, Guatemala, Hong Kong, Hungary, India, Indonesia, Ireland, Israel, Italy, Japan, Jordan, Kenya, Mexico, Morocco, Namibia, Nepal, New Caledonia, New Zealand, Panama, Peru, Portugal, Russia, Scotland, South Africa, South Korea, Sweden, Switzerland, Tibet, Thailand, Trinidad, Turkey, and the United States (including states such as Alaska, Arizona, California, Colorado, Florida, Hawaii, Kansas, Kentucky, Louisiana,

Nevada, New Mexico, New York, South Dakota, Texas, Utah, Washington DC, Wyoming and cities such as Albuquerque, Las Vegas, San Francisco).

76.     Plaintiff's Works appear also in connection with such diverse subjects found on Pinterest as: American Indian, Big Bend, Kashmir, Maasai, Maori, Bat, Hot Air Balloon, and Polar Bear.

77.     Because Pinterest allows users to download images stripped of their metadata, identifying source and/or CMI, Plaintiff and other registered copyright holders are hindered in their efforts to police the misuse of their federally registered images on Pinterest and elsewhere on the internet. They cannot, for example, use simple keyword searches. Rather they must hire services like Pixsy to conduct reverse engine searches, then conduct expensive and/or time-consuming research to track down the infringers.

**D.      There Are Numerous Similar Misuses of Federally Copyrighted Images and Improper Removal of CMI**

78.     Plaintiff is not the only person to have been damaged due to Defendant's misconduct. There are numerous other registered copyright holders whose works are misused and numerous instances in which CMI is removed or altered by Pinterest.

79.     Harold Davis is a renowned digital artist and award-winning professional photographer based in Berkeley, California. Mr. Davis is the author of many bestselling photography books. Mr. Davis' photographs have been licensed by art publishers, corporations, and online and print publications throughout the world, and his works have been exhibited in venues worldwide.

80.     Mr. Davis registers his works and registered "Into the Vortex of the Universe" with the United States Copyright Office on October 22, 2013 (Registration No.: VA 2-010-614).

**Image 17** (advertisements circled).

81.     As seen in the above Pinterest user's screen shot, Pinterest used Plaintiff's "Into the Vortex of the Universe" (indicated by "A" arrow) with no attribution and stripped of his CMI, to promote the wares of PetSmart, Minted (a stationary and paper goods retailer) and Wayfair (a furniture and home decoration retailer). The use of Mr. Davis' federally registered image to sell cheaper knockoffs of his work on Minted and Wayfair causes him direct economic damage.

82.     Nick Koudis is a photographic artist based in New York City and Los Angeles. Mr. Koudis makes his living from the sale and licensing of his visual works. He has been commissioned for national advertisement campaigns and magazine covers for Netflix, American Express, Comedy Central, Visa, Doublemint, Foster's Beer, Time Magazine, Wired, and many other clients.

83.     He federally registers his works. Mr. Koudis filed an application to register the work, "Ironic Death No. 1, Seat Belt Distraction," with the United States Copyright Office, which registration is expected to issue shortly.

84.     As seen in the below Pinterest user's screen shot, Pinterest displayed "Ironic Death No. 1, Seat Belt Distraction," on its website to advertise merchandise and wares, including, but not limited to diaper bags and dog food:

1

2

3

4

5

6

7

8

9

10

11



12   **Image 18** (advertisements by FruitBaby and Rachel Ray Nutrish circled).

13   85.   David Oppenheimer is a photographic artist based in Asheville, North Carolina.

14   Mr. Oppenheimer makes his living from the sale and licensing of his visual works. His

15   photographs have been used on and by national network television, *National Geographic*,

16   *Rolling Stone* magazine, NBC, Goldman Sachs, HBO Sports, and on display at the Museum of

17   the City of New York.

18   86.   Mr. Oppenheimer federally registers his work. Mr. Oppenheimer registered the

19   work, "White Mountain," with the United States Copyright Office on October 22, 2013

20   (Registration No.: VAu 1-151-075).

21   87.   As seen in the below Pinterest user's screen shot, Pinterest displayed "White

22   Mountain," on its website to advertise merchandise and wares, including, but not limited to PMS

23   medication, household goods, and party supplies:

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11



12  **Image 19** (advertisements by Bonafide Health, Purple, and PartyCity circled).

13      88.    Stewart Marsden is a professional photographer based in London, England. Mr.

14  Marsden makes his living from the sale and licensing of his visual works. His photographs have

15  been used internationally and published in many publications, including *The Royal Photographic*

16  *Society* and *National Geographic*. Mr. Marsden's photography also has been used to create

17  special effects sequences for cinema.

18      89.    Mr. Marsden federally registers his works. Mr. Marsden registered the work,

19  "Westminster," with the United States Copyright Office on January 31, 2008 (Registration No.:

20  VA 2-085-861).

21      90.    Mr. Marsden's work was "pinned" and used without permission by a Pinterest

22  user, "City Car Rentals," to advertise its rental car services on Pinterest. Pinterest also displayed

23  Mr. Marsden's work its website to advertise merchandise and wares, including, but not limited to

24  China tour services. *See* Pinterest user's screen shot below.

25

26

27

28



**Image 20** (advertisement by City Car Rentals and lotustour 365 circled).

91.     Pinterest copied, stored, distributed, and displayed countless other images that are federally registered without the permission of the copyright holder for non-fair use purposes.

92.     In line with its modus operandi, Pinterest deliberately stripped "pinned" images, including those cited above, of their metadata, identifying source and/or CMI when Pinterest displayed the images in targeted advertisement and in search results.

## CLASS ALLEGATIONS

93.     Plaintiff brings this action individually and on behalf of the following three classes pursuant to Rule 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

**The Direct Infringement Class**

All persons in the United States whose federally registered copyrighted works were copied, stored, distributed, and/or displayed for commercial purposes by Defendant on Defendant's websites or app without authorization from November 19, 2016 to the date of judgment (collectively, "the Direct Infringement Class").

**The Contributory Infringement Class**

All persons in the United States whose federally registered copyrighted works were made downloadable or embeddable for commercial purposes on Defendant's websites or app without authorization from November 19, 2016 to the date of judgment (collectively, "the Contributory Infringement Class").

**The DMCA Class**

All persons in the United States whose CMI was removed or altered by Defendant when Defendant displayed their images from November 19, 2016 to the date of judgment (collectively, "the DMCA Class").

Excluded from the Direct Infringement Class. the Contributory Infringement Class, and the DMCA Class (collectively, "the Classes") are officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, and their legal representatives, heirs, successors or assigns and any entity in which they have or have had a controlling interest; governmental entities; and, the Court, the Court's immediate family, and the Court's staff.

94.     Plaintiff reserves his right to redefine the Classes prior to certification.

95.     This action is brought and may properly be maintained as a class action pursuant to Federal Rule of Civil Procedure 23. This action satisfies the numerosity, typicality, adequacy, predominance, and superiority requirements of those provisions. The Classes are so numerous that the individual joinder of all of its members is impracticable. Due to the nature of Defendant's websites and app, Plaintiff believes that the total number of Class members is in the thousands and that members of the Classes are geographically dispersed across the United States

1    of America. Although the exact number and identities of the Class members are unknown at this

2    time, such information can be ascertained through appropriate investigation and discovery.

3         96.    Common questions of law and fact exist as to all members of the Classes, and

4    these common questions predominate over any questions affecting only individual members of

5    the Classes. These common legal and factual questions, which do not vary from Class member to

6    Class member, and which may be determined without reference to the individual circumstances

7    of any Class member include, but are not limited to, the following:

8              (a)      Whether members of the Classes have the exclusive right to the federally

9                       registered copyrighted works that are available on Defendant's websites

10                      and app;

11             (b)      Whether Defendant violated the Copyright Act;

12             (c)      Whether Defendant's violation of the Copyright Act was willful;

13             (d)      Whether Defendant violated Section 1202(b) of the DMCA;

14             (e)      Whether Defendant had a license to commercially exploit the Classes'

15                      federally registered copyrighted works;

16             (f)      Whether Defendant's use of the Classes' federally registered copyrighted

17                      works constitutes fair use;

18             (g)      Whether Plaintiff and the members of the Classes have been damaged by

19                      the actions or conduct of Defendant;

20             (h)      Whether injunctive relief is appropriate; and

21             (i)      The proper measure of damages.

22        97.    Plaintiff's claims are typical of those of the Classes because, like all members of

23   the Classes, Plaintiff's federally registered copyrighted works were copied, stored, distributed,

24   and/or displayed for commercial purposes by Defendant on Defendant's websites or app without

25   authorization; his federally registered copyrighted works were made downloadable or

26   embeddable on Defendant's websites or app for commercial purposes without authorization; the

27   CMI on Plaintiff's works were intentionally and knowingly removed or altered by Defendant

28

-31-

1   when Defendant displayed Plaintiff's works; and he sustained damages from Defendant's
2   wrongful conduct.

3       98.     Plaintiff will fairly and adequately protect the interests of the Classes and has
4   retained counsel who are experienced in intellectual property and in litigating class actions.
5   Plaintiff has no interests that conflict with those of the Classes.

6       99.     A class action is superior to other available methods for the fair and efficient
7   adjudication of this controversy. Individual joinder of all members of the Classes is
8   impracticable. Even if individual members of the Classes had the resources to pursue individual
9   litigation, it would be unduly burdensome to the courts in which the individual litigation would
10  proceed. Individual litigation magnifies the delay and expense to all parties in the court system
11  of resolving the controversies engendered by Defendant's common course of conduct. The class
12  action device allows a single court to provide the benefits of unitary adjudication, judicial
13  economy, and the fair and efficient handling of all Class members' claims in a single forum. The
14  conduct of this action as a class action conserves the resources of the parties and of the judicial
15  system and protects the rights of the Classes. Furthermore, for many, if not most, a class action is
16  the only feasible mechanism that allows an opportunity for legal redress and justice.

17      100.    This action is maintainable as a class action under Federal Rule of Civil
18  Procedure 23(b)(2) because Defendant has acted or refused to act on grounds generally
19  applicable to the Classes, thereby making appropriate final injunctive relief respecting the
20  Classes as a whole.

21      101.    This action is maintainable as a class action under Federal Rule of Civil
22  Procedure 23(b)(3) because the common questions of law and fact identified above, without
23  limitation, predominate over any questions affecting only individual members, and a class action
24  is superior to other available methods for the fair and efficient adjudication of this controversy.

25
26
27
28

CLASS ACTION COMPLAINT

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Infringement of Copyright On Behalf of Plaintiff and the Direct Infringement Class**

102.    Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

103.    Plaintiff and the Direct Infringement Class are, and at all relevant times have been, the sole copyright owners of their federally registered works.

104.    Defendant, without the permission or consent of Plaintiff or the Direct Infringement Class, copied, distributed, and publicly displayed their federally registered, copyright protected works. Defendant's acts violated the exclusive rights of Plaintiff and the Direct Infringement Class under the Copyright Act.

105.    Defendant's actions constitute infringement of the copyrights of Plaintiff and the Direct Infringement Class under the Copyright Act.

106.    Plaintiff is informed and believes that the foregoing act of infringement was willful and intentional in disregard of and with indifference to the rights of Plaintiff and the Direct Infringement Class.

107.    Each dissemination of a copyrighted work on and through Defendant's websites and app constitutes a separate and distinct act of infringement under the Copyright Act.

108.    Pursuant to 17 U.S.C. § 504(c)(1), Plaintiff and the Direct Infringement Class are entitled to the minimum statutory damages of $750 per work infringed by Defendant. Plaintiff and the Direct Infringement Class also seek up to $30,000 per work infringed by Defendant as allowed under 17 U.S.C. § 504(c)(1), or such other amounts as may be deemed proper by the Court under 17 U.S.C. § 504(c)(1).

109.    Based upon Defendant's willful violation of the Copyright Act, Plaintiff and the Direct Infringement Class also seek statutory damages – concurrent with damages awarded pursuant to 17 U.S.C. § 504(c)(1) – of $150,000 per work infringed by Defendant, or such other amounts as may be deemed proper by the Court under 17 U.S.C. § 504(c)(2).

110.    Plaintiff and the Direct Infringement Class are entitled to their actual damages, which include all of Defendant's profits derived from the infringement of their federally registered works in amounts to be proven at trial. In addition, Plaintiff and the Class are entitled to costs and reasonable attorneys' fees in prosecuting this action pursuant to 17 U.S.C. § 505.

### SECOND CAUSE OF ACTION
**Contributory Infringement of Copyright On Behalf of Plaintiff
and the Contributory Infringement Class**

111.    Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

112.    Third parties have used Pinterest websites and app to engage in copyright infringement of the federally registered works of the Plaintiff and the Contributory Infringement Class, including but not limited to "Casa Rondena Winery, Los Ranchos de Albuquerque (metro Albuquerque), New Mexico USA," and "Hot air balloons flying at sunrise (with the Sandia Mountains in the background), Albuquerque International Balloon Fiesta, Albuquerque, New Mexico USA," in violation of the Copyright Act.

113.    Defendant had knowledge of direct infringement by third parties of the federally registered works of Plaintiff and the Contributory Infringement Class on and through Pinterest's websites and app.

114.    Defendant directly induced and materially contributed to the infringement by third parties of the federally registered works of the Plaintiff and the Contributory Infringement Class.

115.    Each dissemination of a copyrighted work by third parties on and through Defendant's websites and app constitutes a separate and distinct act of infringement under the Copyright Act.

116.    Pursuant to 17 U.S.C. § 504(c)(1), Plaintiff and the Contributory Infringement Class are entitled to the minimum statutory damages of $750 per work infringed by Defendant. Plaintiff and the Contributory Infringement Class also seek up to $30,000 per work infringed by

1  Defendant as allowed under 17 U.S.C. § 504(c)(1), or such other amounts as may be deemed
2  proper by the Court under 17 U.S.C. § 504(c)(1).

3      117.    Based upon Defendant's willful contributory violation of the Copyright Act,
4  Plaintiff and the Contributory Infringement Class also seek statutory damages – concurrent with
5  damages awarded pursuant to 17 U.S.C. § 504(c)(1) – of $150,000 per work infringed by
6  Defendant, or such other amounts as may be deemed proper by the Court under 17 U.S.C. §
7  504(c)(2).

8      118.    Plaintiff and the Contributory Infringement Class are entitled to their actual
9  damages in amounts to be proven at trial. In addition, Plaintiff and the Class are entitled to costs
10  and reasonable attorneys' fees in prosecuting this action pursuant to 17 U.S.C. § 505.

11
12
                                **THIRD CAUSE OF ACTION**
13
    **Violation of the DMCA On Behalf of Plaintiff and the DMCA Class**

14      119.    Plaintiff repeats each and every allegation contained in the paragraphs above and
15  incorporates such allegations by reference herein.

16      120.    Section 1202(b) of the DMCA, 17 U.S.C. § 1202(b), states:

17          No person shall, without the authority of the copyright owner or the
        law
18
19          (1) intentionally remove or alter any copyright management
        information,

20          (2) distribute or import for distribution copyright management
        information knowing that the copyright management information has
21          been removed or altered without authority of the copyright owner or
        the law, or
22
23          (3) distribute, import for distribution, or publicly perform works,
        copies of works, or phonorecords, knowing that copyright
24          management information has been removed or altered without
        authority of the copyright owner or the law,

25          knowing, or, ... having reasonable grounds to know, that it will induce,
        enable, facilitate, or conceal an infringement of any right under this
26          title.

27  17 U.S.C. § 1202(b).
28

121.   Pinterest intentionally and knowingly removed or altered the CMI from the works of Plaintiff and the DMCA Class when it displayed those works on its website or app.

122.   Pinterest provided tools to its users on its website and app to easily download the works of Plaintiff and the DMCA Class without their CMI.

123.   Pinterest knowingly removed or altered the CMI to induce, enable, facilitate, or conceal its direct and/or contributory infringement of the works of Plaintiff and the DMCA Class.

124.   Each removal or alteration of the CMI of the works of Plaintiff and the DMCA Class constitutes a separate and distinct act of violation of § 1202(b) of the DMCA.

125.   Pursuant to 17 U.S.C. § 1203(c)(3), Plaintiff and the DMCA Class are entitled to a minimum of $2,500 for each violation of section §1202 and up to a maximum statutory damages of $25,000 with respect to each instance the CMI of Plaintiff  and the other members of the DMCA Class was removed or altered by Defendant, or such other amounts as may be deemed proper under 17 U.S.C. § 1203(c)(3).

126.   Plaintiff and the DMCA Class are entitled to their actual damages in amounts to be proven at trial pursuant to 17 U.S.C. § 1203(c)(2). In addition, Plaintiff and the Class are entitled to costs and reasonable attorneys' fees in prosecuting this action pursuant to 17 U.S.C. § 1203(b).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the members of the Classes, respectfully requests the Court to enter an Order:

A.   certifying the proposed Classes under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), as set forth above;

B.   declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

C.   declaring that Defendant has committed the violations of the Copyright Act and Section 1202(b) of the DMCA as alleged herein;

D.   providing for any and all injunctive relief the Court deems appropriate;

1        E.      awarding statutory damages as provided for in the Copyright Act and the DCMA;

2        F.      awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

G.      Awarding Plaintiff his costs and reasonable attorney's fees in this action, pursuant to the Copyright Act and the DMCA; and

H.      Awarding Plaintiff such other and further relief as is just and proper.

CLASS ACTION COMPLAINT

1

## JURY DEMAND

2          Plaintiff hereby demands a trial by jury on all claims for which there is a right to jury

3     trial.

4

5     Dated: July 31, 2020                     **REESE LLP**

6                                              */s/ Michael R. Reese*
                                               Michael R. Reese (Cal. State Bar No. 206773)

7                                              Sue J. Nam (Cal. State Bar No. 206729)
                                               100 West 93rd Street, 16th Floor

8                                              New York, New York 10025
                                               Telephone: (212) 643-0500

9                                              Facsimile: (212) 253-4272
                                               Email: *mreese@reesellp.com*

10                                                     *snam@reesellp.com*

11                                             **REESE LLP**

12                                             George V. Granade (Cal. State Bar No. 316050)
                                               8484 Wilshire Boulevard, Suite 515

13                                             Los Angeles, California 90211
                                               Telephone: (212) 643-0500

14                                             Facsimile: (212) 253-4272
                                               Email: *ggranade@reesellp.com*

15

16                                             - and –

17

18                                             **THE LAW OFFICE OF DAVID C. DEAL,
                                               P.L.C.**

19                                             David C. Deal (VA Bar No.: 86005)

20                                             P.O. Box 1042
                                               Crozet, Virginia 22932

21                                             Telephone: (434) 233-2727

22                                             *Attorneys for Plaintiff and the Proposed Class*

23

24

25

26

27

28

CLASS ACTION COMPLAINT

EXHIBIT A

## <u>Selected Works of Blaine Harrington III</u>

### <u>Copyrighted Work No. 1.</u>

The following photograph is entitled, "Prayer flags on Dochu La (pass) between the Thimphu and Punakha Valleys, Bhutan," internal file no. AS-00-30-18.

Plaintiff registered this work with the United States Copyright Office on April 26, 2011 (Registration No.: VA1-775-610).



**Copyrighted Work No. 2.**

The following photograph is entitled, "St. Magdalena, Dolomites, Italy," internal file no. E-00-40-31.

Plaintiff registered this work with the United States Copyright Office on April 26, 2011 (Registration No.: VA1-775-610).



**Copyrighted Work No. 3.**

The following photograph is entitled, "Jackson Lake, Grand Teton National Park, Wyoming USA," internal file no. USA-W-95-2-30.

Plaintiff registered this work with the United States Copyright Office on April 26, 2011 (Registration No.: VA1-775-610).



**Copyrighted Work No. 4.**

The following photograph is entitled, "Shikara, Dal Lake, Srinagar, Kashmir, India," internal file no. 20130815_asia_06116.

Plaintiff registered this work with the United States Copyright Office on February 16, 2014 (Registration No.: VAu1-158-420).



**Copyrighted Work No. 5.**

The following photograph is entitled, "Golden Gate Bridge, San Francisco, CA USA," internal file no. USA-CA-03-7-09.

Plaintiff registered this work with the United States Copyright Office on April 26, 2011 (Registration No.: VA1-775-610).



**Copyrighted Work No. 6.**

The following photograph is entitled, "Shalimar Bagh, Kashmir, India," internal file no. 20130815_asia_05532.

Plaintiff registered this work with the United States Copyright Office on February 16, 2014 (Registration No.: VAu1-158-420).



**Copyrighted Work No. 7.**

The following photograph is entitled, "Near Pienza, Tuscany, Italy," internal file no. E-03-18-13.

Plaintiff registered this work with the United States Copyright Office on April 26, 2011 (Registration No.: VA1-775-610).



**Copyrighted Work No. 8.**

The following photograph is entitled, "Shikara on Dal Lake, Kashmir," internal file no. 20130815_asia_06018.

Plaintiff registered this work with the United States Copyright Office on February 16, 2014 (Registration No.: VAu1-158-420).



**Copyrighted Work No. 9.**

The following photograph is entitled, "Feluccas on Nile River, Aswan, Egypt," internal file no. 20090204_egypt_1652.

Plaintiff registered this work with the United States Copyright Office on April 26, 2011 (Registration No.: VA1-775-610).



**Copyrighted Work No. 10.**

The following photograph is entitled, "Saxman totem poles (largest collection of totem poles in the world), Saxman near Ketchikan, Southeast Alaska USA," internal file no. 20110514_alaska_0135.

Plaintiff registered this work with the United States Copyright Office on August 29, 2011 (Registration No.: VAu1-077-015).



**<u>Copyrighted Work No. 11.</u>**

The following photograph is entitled, "Vineyards, Millar Road Winery, New Zealand," internal file no. 20111104_newzea_1413.

Plaintiff registered this work with the United States Copyright Office on December 27, 2011 (Registration No.: VAu1-086-709).



**<u>Copyrighted Work No. 12.</u>**

The following photograph is entitled, "Road near Mittenwald, Bavaria, Germany," internal file no. E-97-2-31.

Plaintiff registered this work with the United States Copyright Office on April 26, 2011 (Registration No.: VA1-775-610).



**Copyrighted Work No. 13.**

The following photograph is entitled, "Kula Highway, Maui, Hawaii," internal file no. HAW-02-68-29.

Plaintiff registered this work with the United States Copyright Office on April 26, 2011 (Registration No.: VA1-775-610).



**Copyrighted Work No. 14.**

The following photograph is entitled, "Man on camel, Nubian village near Aswan, Egypt," internal file no. 20090204_egypt_2319.

Plaintiff registered this work with the United States Copyright Office on April 26, 2011 (Registration No.: VA1-775-610).



**Copyrighted Work No. 15.**

The following photograph is entitled, "Market, Old Leh, Ladakh, India," internal file no. 20130815_asia_03548.

Plaintiff registered this work with the United States Copyright Office on February 16, 2014 (Registration No.: VAu1-158-420).



**Copyrighted Work No. 16.**

The following photograph is entitled, "Nubian village near Aswan, Egypt," internal file no. 20090204_egypt_2129.

Plaintiff registered this work with the United States Copyright Office on April 26, 2011 (Registration No.: VA1-775-610).



**<u>Copyrighted Work No. 17.</u>**

The following photograph is entitled, "Aerial view of balloons flying at Albuquerque Balloon Fiesta," internal file no. 20121008_nm-tex_0301.

Plaintiff registered this work with the United States Copyright Office on March 5, 2013 (Registration No.: VAu 1-132-209  ).



## Copyrighted Work No. 18.

The following photograph is entitled, "Paro Festival, Bhutan," internal file no. 20060329_bhutan_2110.

Plaintiff registered this work with the United States Copyright Office on April 26, 2011 (Registration No.: VA1-775-610).



**Copyrighted Work No. 19.**

The following photograph is entitled, "Castle of Chillon, Montreux, Switzerland," internal file no. E-01-23-22.

Plaintiff registered this work with the United States Copyright Office on April 26, 2011 (Registration No.: VA1-775-610).



**Copyrighted Work No. 20.**

The following photograph is entitled, "Boat with flowers, Dal Lake, Kashmir, India," internal file no. 20130815_asia_06278.

Plaintiff registered this work with the United States Copyright Office on February 16, 2014 (Registration No.: VAu1-158-420).



**<u>Copyrighted Work No. 21.</u>**

The following photograph is entitled, "Shalimar Bagh (a Mughal Garden), near Srinagar, Kashmir, Jammu and Kashmir State, India," internal file no. 20130815_asia_06018.

Plaintiff registered this work with the United States Copyright Office on February 16, 2014 (Registration No.: VAu VAu1-158-420).



**Copyrighted Work No. 22.**

The following photograph is entitled, "Shalimar Bagh, Kashmir, India," internal file no. 20130815_asia_05624.

Plaintiff registered this work with the United States Copyright Office on February 16, 2014 (Registration No.: VAu1-158-420).



**Copyrighted Work No. 23.**

The following photograph is entitled, "Kara Tribe Boys with Boy Chalk Paintings On Their Bodies Jump In the Air, With Omo River Behind, Dus Village, Omo Valley, Ethiopia," internal file no. 20190919_africa_1777.

Plaintiff registered this work with the United States Copyright Office on December 2, 2019 (Registration No.: VAu 1-383-570).



**Copyrighted Work No. 24.**

The following photograph is entitled, "3 Indian men, Jodhpur, India," internal file no. IND-94-73-17.

Plaintiff registered this work with the United States Copyright Office on April 26, 2011 (Registration No.: VA1-775-610).



**<u>Copyrighted Work No. 25.</u>**

The following photograph is entitled, "Yoga at Red Rocks, Morrison, CO USA," internal file no. 20140802_rocyoga_147.

Plaintiff registered this work with the United States Copyright Office on December 27, 2011 (Registration No.: VAu1-086-709).



**Copyrighted Work No. 26.**

The following photograph is entitled, "Egyptian girls, Cairo, Egypt," internal file no. 20090204_egypt_0577.

Plaintiff registered this work with the United States Copyright Office on April 26, 2011 (Registration No.: VA1-775-610).



**Copyrighted Work No. 27.**

The following photograph is entitled, "Group of Nepalese children, Durbar Square, Patan, Nepal," internal file no. WOR-96-124-22.

Plaintiff registered this work with the United States Copyright Office on April 26, 2011 (Registration No.: VA1-775-610).



## Copyrighted Work No. 28.

The following photograph is entitled, "Embera Indian women, Panama," internal file no. 20070306_panama_1093.

Plaintiff registered this work with the United States Copyright Office on April 26, 2011 (Registration No.: VA1-775-610).



**Copyrighted Work No. 29.**

The following photograph is entitled, "Shikara boat, Dal Lake, Kashmir, India," internal file no.

20130815_asia_06026.

Plaintiff registered this work with the United States Copyright Office on February 16, 2014 (Registration No.: VAu1-158-420).



**Copyrighted Work No. 30.**

The following photograph is entitled, "Bishnoi tribe, Rohat, India," internal file no. 20070123_india_4455.

Plaintiff registered this work with the United States Copyright Office on April 26, 2011 (Registration No.: VA1-775-610).



**Copyrighted Work No. 31.**

The following photograph is entitled, "Rice terraces, near Sapa, Vietnam," internal file no.

20170223_world_19776.

Plaintiff registered this work with the United States Copyright Office on July 07, 2017 (Registration No.: VAu1-281-607).



**Copyrighted Work No. 32.**

The following photograph is entitled, "Maasai men, Amboseli National Park, Kenya," internal file no. 20080610_africa_06995.

Plaintiff registered this work with the United States Copyright Office on April 26, 2011 (Registration No.: VA1-775-610).



**Copyrighted Work No. 33.**

The following photograph is entitled, "Novice monk reading, Inwa, Burma," internal file no. 20060108_burma_1280.

Plaintiff registered this work with the United States Copyright Office on April 26, 2011 (Registration No.: VA1-775-610).



**Copyrighted Work No. 34.**

The following photograph is entitled, "Waikiki Beach, Honolulu, Oahu, Hawaii, USA," internal file no. 20070624_hawaii_0258.

Plaintiff registered this work with the United States Copyright Office on April 26, 2011 (Registration No.: VA1-775-610).



**<u>Copyrighted Work No. 35.</u>**

The following photograph is entitled, "Casa Rondena Winery, Los Ranchos de Albuquerque (metro Albuquerque), New Mexico USA," internal file no. 20121008_nm-tex_0011.

Plaintiff registered this work with the United States Copyright Office on March 5, 2013 (Registration No.: VAu 1-132-209).



**Copyrighted Work No. 36.**

The following photograph is entitled, "Hot air balloons flying at sunrise (with the Sandia Mountains in the background), Albuquerque International Balloon Fiesta, Albuquerque, New Mexico USA," internal file no. 20121008_nm-tex_2958.

Plaintiff registered this work with the United States Copyright Office on March 5, 2013 (Registration No.: VAu 1-132-209).



**Copyrighted Work No. 37.**

The following photograph is entitled, "Women working, Amber Palace, Amber (near Jaipur), Rajasthan, India," internal file no. 20070123_india_1983.

Plaintiff registered this work with the United States Copyright Office on April 26, 2011 (Registration No.: VA1-775-610).



**Copyrighted Work No. 38.**

The following photograph is entitled, "The schooner Western Union at sunset, off Key West, Florida Keys, Florida USA," internal file no. 20110427_florida_5604.

Plaintiff registered this work with the United States Copyright Office on August 29, 2011 (Registration No.: VAu1-077-15).



**<u>Copyrighted Work No. 39.</u>**

The following photograph is entitled, "Maori man with ta moko (facial tatoo), Manurewa Sunday Market, Auckland, New Zealand," internal file no. 20111104_newzea_2414.

Plaintiff registered this work with the United States Copyright Office on August 27, 2011 (Registration No.: VAu1-086-709).



**Copyrighted Work No. 40.**

The following photograph is entitled, "Waikiki Beach (Diamond Head crater on right), Honolulu, Oahu, Hawaii USA," internal file no. HAW-02-15-38.

Plaintiff registered this work with the United States Copyright Office on April 26, 2011 (Registration No.: VA1-775-610).



**Copyrighted Work No. 41.**

The following photograph is entitled, "Kuna Indian woman with nose ring smoking a pipe (wearing native costume with Mola embroideries), Corbisky Island, San Blas Islands (Kuna Yala), Caribbean Sea, Panama," internal file no. 20070306_panama_0082.

Plaintiff registered this work with the United States Copyright Office on April 26, 2011 (Registration No.: VA1-775-610).



**Copyrighted Work No. 42.**

The following photograph is entitled, "Maiko (Geisha apprentice), Kitano-Tenmangu Shrine, Kyoto, Japan," internal file no. JAP-04-78-31.

Plaintiff registered this work with the United States Copyright Office on April 26, 2011 (Registration No.: VA1-775-610).

