**REESE LLP**
Michael R. Reese (Cal. State Bar No. 206773)
Sue J. Nam (Cal. State Bar No. 206729)
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone:  (212) 643-0500
Email:  *mreese@reesellp.com*
        *snam@reesellp.com*

*Attorneys for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLAINE HARRINGTON III, on behalf of himself and all others similarly situated,<br><br>                              Plaintiff,<br><br>      vs.<br><br>PINTEREST, INC.<br><br>                              Defendant | Civil Case No.: 5:20-cv-05290-EJD<br><br>**SECONDED AMENDED CLASS ACTION COMPLAINT**<br><br>(1) Copyright Infringement, 17 U.S.C. § 101 *et seq.*;<br>(2) Violation of the DMCA, 17 U.S.C. § 1202(b)<br><br>**Demand for Jury Trial** |

Plaintiff Blaine Harrington III ("Plaintiff") individually and on behalf of all others similarly situated (the "Classes," as defined below), brings this Class Action Complaint against Pinterest, Inc. ("Pinterest" or "Defendant") and respectfully alleges as follows. Plaintiff bases the allegations herein on personal knowledge as to matters related to, and known to, him. As to all other matters, he bases his allegations on information and belief, through investigation of his counsel. Plaintiff believes substantial evidentiary support exists for his allegations, and he seeks a reasonable opportunity for discovery.

## INTRODUCTION

1.      Pinterest was founded in 2008 and has quickly grown to be one of the largest social media platforms in the world with 454 million monthly active users worldwide. *See* Pinterest Form 10 Q for the quarterly period ending June 30, 2021, available at https://d18rn0p25nwr6d.cloudfront.net/CIK-0001506293/20fa873f-8ce4-4081-8447-af2903ecb141.pdf at 22. Pinterest bills itself a "visual discovery engine that people around the globe use to find the inspiration to create a life they love." *Id.*, at 12.

2.      Like many successful social media companies, Pinterest is both Dr. Jekyll and Mr. Hyde. On the one hand, Pinterest has become a wildly popular social media site and mobile application by allowing its users or "Pinners" to freely create and share virtual image boards. On the other hand, Pinterest monetizes the images "pinned" by its users to the detriment of federally registered image owners like Plaintiff.

3.      Although "Pinners" and advertisers may love Pinterest, it is the bane of copyright owners whose federally registered images are misused by and through Pinterest.

4.      By providing a mechanism for people to easily "pin" images from the internet, including the registered copyrighted works of people like Plaintiff, Pinterest collects, stores, sorts, manipulates, distributes, and displays the billions of images its users "pin."

5.      Pinterest depends on the constant "pinning" of images by users, with little regard for the source or the rights of the owners of those images, because the foundation of Pinterest's business is the hundreds of billions of images uploaded by users, not one of them paid for by Pinterest.

6.      Pinterest monetizes those images – often without the identifying source of those images and certainly without authorization or compensation to the copyright holders of those images – by making derivative works of, displaying and distributing those images to its users, which are incorporated with targeted advertisement. Moreover, the enormous number of images that are "pinned" by users is the data that feeds Pinterest's artificial intelligence used to generate advertisement revenues for Pinterest. The more images that are "pinned," the more Pinterest can use those images to make its websites and app more personalized and "sticky" to users, thereby making its paid advertisement more effective and more valuable.

7.      The result is the grotesque misuse of artistic works to peddle products in a manner to which the copyright owner has never and would never consent. For example, Plaintiff's image of indigenous people is used by Pinterest to advertise bras. And this is just the tip of the iceberg, as a review of Pinterest's websites reveals thousands upon thousands of federally copyrighted images used by Pinterest to hawk goods and services.

8.      Pinterest infringed, and continues to infringe, the copyrights of Plaintiff and other similarly situated owners of federally registered copyrights.

9.      Plaintiff certainly is not the only registered copyright owner who has been harmed by Pinterest's misconduct. There are numerous articles and posts discussing the rampant copyright infringement by and through Pinterest. *See, e.g.*, Vishneski, Bob, "*Pinterest – Copyright Infringement Made Cool*," February 16, 2019 ("*[T]here are some real issues with its business model, specifically related to copyright violations…when Pinterest is inviting their users to pin "beautiful things," they are encouraging them to violate the copyright rule*") available at https://photographylife.com/pinterest-copyright-infringement-made-cool; "*Is Pinterest a Copyright Infringement Masterpiece*," February 13, 2019 (Pinterest is "*the epitome of copyright infringement*") available at https://creativefuture.org/pinterest/; Giannini, Sterin, "*Is Pinterest a Haven for Copyright Violations?*," April 28, 2016 ("*Thousands of Pinterest members are breaking copyright and causing headaches for artists, photographers, and bloggers.*") available at https://turbofuture.com/internet/Is-Pinterest-a-Haven-for-Copyright-Violations.

SECOND AMENDED CLASS ACTION COMPLAINT

10. Photographers, visual artists, and other owners of federally registered copyrights are damaged by having their images commercialized without consent by and through Pinterest. The unauthorized use by and through Pinterest negatively impacts the value of the federally registered images, which were registered by the owners of the images because they expressly wish to protect their images to the fullest extent of the law.

11. This putative class action seeks to remedy the harm that Pinterest has caused to Plaintiff and other owners of federally registered copyrights by its unlawful acts. This action seeks actual or statutory damages and injunctive relief for infringement under the Copyright Act of the United States, 17 U.S.C. § 101 et seq. (the "Copyright Act") and actual or statutory damages and injunctive relief for violation of the Digital Millennial Copyright Act (the "DMCA"), 17 U.S.C. § 1202(b).

## PARTIES

### A.  Plaintiff Blaine Harrington III

12. Plaintiff Blaine Harrington III is a resident of Littleton, Colorado.

13. Mr. Harrington is a renowned and award-winning professional travel photographer. He is a three-time SATW Travel Photographer of the Year (2005, 2006, 2019), and has been awarded prizes in other major photography competitions. He has worked on assignment for most major news, business and travel magazines, including *Business Week, Delta Sky, Endless Vacation, Forbes, Geo, Islands, National Geographic Adventure, National Geographic Traveler, Newsweek, New York Times* magazine**,** *Outside, Popular Photography, Ski, Smithsonian, Time, Travel + Leisure.* Mr. Harrington's images have been licensed by U.S. textbook publishers and encyclopedias; National Geographic and Time-Life books; and travel guides including *Fodor's*, *Frommer's*, *Insight Guides*, *Moon Guides*, *Real Guide*, and *Rick Steves*. Mr. Harrington also has been engaged by corporate clients, including Abercrombie & Kent, Boundless Journeys, Backroads, Coldwater Creek, European Travel Commission, Fuji Photo Film USA, Globus, Grand Circle Travel, Holland America, Mountain Travel-Sobek, Nikon, Overseas Adventure Travel, Tauck, The Territory Ahead, Travel Smith, and Wilderness Travel**.**

SECOND AMENDED CLASS ACTION COMPLAINT

14.    Mr. Harrington makes his living from the sale and licensing of his photographs. Mr. Harrington federally registers his photographic images.

15.    Mr. Harrington is, and at all relevant times has been, the sole copyright owner of his photographic works (his "Works"), including but not limited to those listed in Exhibit A. Plaintiff's Works are the subject of valid and complete Certificates of Copyright Registration issued by the United States Copyright Office.

16.    Mr. Harrington's Works are highly desired by collectors and licensees but also the target of unauthorized copying. Because of the frequent theft of his Works, especially on the internet, Mr. Harrington has devoted significant time and resources in monitoring the improper use of his Works. Mr. Harrington uses Pixsy (www.pixsy.com), an online platform for image owners to discover where and how their images are being used online. Mr. Harrington also hires attorneys to send cease-and-desist letters and initiate actions against copyright infringers.

**B.    Defendant Pinterest**

17.    Pinterest is a for-profit Delaware corporation with headquarters in San Francisco, California.

18.    Pinterest owns, operates, and is solely responsible for the content of its websites worldwide, including but not limited to www.pinterest.com, www.pinterest.ca, www.pinterest.mx, www.pinterest.uk, www.pinterest.com.au, www.pinterest.de, www.pinterest.jp, www.pinterest.fr, www.pinterest.it, www.pinterest.es, and the Pinterest mobile application ("app").

**JURISDICTION AND VENUE**

19.    The Court has original subject matter jurisdiction over copyright claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a).

20.    This Court also has original subject matter jurisdiction over this proposed class action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of Title 28 of the United States Code), under 28 U.S.C. § 1332(d), which provides for the original jurisdiction of the federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs,

1   and [that] is a class action in which . . . any member of a class of plaintiffs is a citizen of a State

2   different from any defendant." 28 U.S.C. § 1332(d)(2)(A). Because Plaintiff seeks to represent a

3   nationwide class, at least one member of the plaintiff class is a citizen of a State different from

4   Defendant. Furthermore, Plaintiff alleges the matter in controversy is well in excess of $5,000,000

5   in the aggregate, exclusive of interest and costs. Finally, Plaintiff alleges "the number of members

6   of all proposed plaintiff classes in the aggregate" is greater than 100. *See* 28 U.S.C. §

7   1332(d)(5)(B).

8        21.    This Court has personal jurisdiction over Defendant because the events giving rise

9   to the claims occurred in this District, Defendant engaged in infringement in this District,

10  Defendant resides in this District, and Defendant is subject to personal jurisdiction in this District.

11       22.    Venue in this District is proper under 28 U.S.C. § 1391(b) in that a substantial part

12  of the events giving rise to the within claims occurred in this judicial district, and under 28 U.S.C.

13  § 1400(b) in that it is a judicial district where Defendant has committed acts of copyright

14  infringement and had a regular and established place of business.

15                    **ALLEGATIONS COMMON TO ALL CLAIMS**

16       23.    Pinterest, through its websites and app, allows its users to create and share virtual

17  bulletin boards, or "boards," to which they have posted, or "pinned," items that have been

18  uploaded. Users can have multiple boards for various topics or themes. Users can browse, like,

19  and comment on each other's Boards and Pins, and "re-pin" each other's content. *See*

20  https://help.pinterest.com/en/guide/all-about-pinterest. Although Pinterest characterizes "pins" as

21  "bookmarks that people use to save ideas they love on Pinterest," *id.*, Pinterest is primarily an

22  image-based platform. Thus, the vast majority of "pinned" items are images, whether still or

23  moving, uploaded from the internet.

24       24.    A user's main Pinterest page is a "home feed." The Pins in a user's home feed are

25  not simply those that the user has selected. Instead, Pinterest displays other Pins from a library of

26  images "pinned" by users, which Pinterest collects, stores and maintains. Pinterest's library of

27  images is estimated to be in the hundreds of billions. The images Pinterest displays to the user are

28  personalized based on the specific user's boards, recent activity on Pinterest, and favorite topics.

Importantly, the images users see on their home feed are integrated with advertisements designed to appear similar or along the same theme to the users' Pins.

25.     Pinterest generates its revenue with these advertisements. *See* Pinterest Form 10 Q for the quarterly period ending June 30, 2021, available at https://d18rn0p25nwr6d.cloudfront.net/CIK-0001506293/20fa873f-8ce4-4081-8447-af2903ecb141.pdf, at 14 ("We generate revenue by delivering ads on our website and mobile application.). In just the third quarter of 2021, Pinterest generated approximately $613 million in ad revenue. *Id.* at 9.

26.     Pinterest uses its library of images to entice users to interact with its websites and app, including by distributing the images directly to the user by email and/or through the Pinterest app. Pinterest seamlessly integrates advertisement into the various "pinned" images it displays, so that the images are part of the targeted advertisement campaign.



**Image 1** (Pinterest user's screen shot with advertisements circled).

A.      **Pinterest's Improper Use of Registered Copyrighted Images to Generate Advertisement Revenue**

27.     Although Pinterest employs a highly sophisticated system for identifying and cataloguing "pinned" images, Pinterest does not have in place a system of screening the Pins for

copyright notices or other indicia of copyright ownership associated with the "pinned" images. Indeed, Pinterest deliberately removes indicia of copyright ownership to render its paid advertisement more effective and to actively thwart the efforts of copyright owners, like Plaintiff, to police the misuse of their works on and through Pinterest's website and app.

28.     The result is the blatant misuse by Pinterest of federally registered images to provide targeted advertisement.

29.     Plaintiff's Works have been displayed without his consent by Pinterest to advertise a wide range of goods and services.



**Image 2.**

30.     As seen in the above Pinterest user's screen shot, Plaintiff's "Prayer flags on Dochu La (pass) between the Thimphu and Punakha Valleys, Bhutan," listed as Copyrighted Work No. 1 on Exhibit A, (indicated by "A" arrow), was originally "pinned" by "Birgit Fischer" and saved to the "Bhutan-Königreich im Himmel" board (circled). Pinterest then copied and distributed

SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiff's copyrighted image to other Pinterest users to advertise cheap airline tickets from WikiBuy (circled on bottom left) and financial services from Wesley Financial Group (circled on bottom right).

31.   Pinterest also displayed Plaintiff's other Works without attribution. In the above screen shot (Image 2), the following Works are displayed:

- "St. Magdalena, Dolomites, Italy," listed as Copyrighted Work No. 2 on Exhibit A (indicated by "B" arrow)
- "Jackson Lake, Grand Teton National Park, Wyoming USA," listed as Copyrighted Work No. 3 on Exhibit A (indicated by "C" arrow)
- "Shikara, Dal Lake, Srinagar, Kashmir, India," listed as Copyrighted Work No. 4 on Exhibit A (indicated by "D" arrow)
- "Golden Gate Bridge, San Francisco, California, USA," listed as Copyrighted Work No. 5 on Exhibit A (indicated by "E" arrow)
- "Shalimar Bagh, Kashmir, India," listed as Copyrighted Work No. 6 on Exhibit A (indicated by "F" arrow)
- "Pienza, Tuscany, Italy," listed as Copyrighted Work No. 7 on Exhibit A (indicated by "G" arrow)
- "A shikara (boat) on Dal Lake in Srinagar, Kashmir, Jammu and Kashmir State, India," listed as Copyrighted Work No. 8 on Exhibit A (indicated by "H" arrow)
- "Feluccas on Nile River, Aswan, Egypt," listed as Copyrighted Work No. 9 on Exhibit A (indicated by "me" arrow)
- "Saxman totem poles (largest collection of totem poles in the world), Saxman near Ketchikan, Southeast Alaska USA," listed as Copyrighted Work No. 10 on Exhibit A (indicated by "J" arrow)
- "Vineyards, Millar Road Winery, New Zealand," listed as Copyrighted Work No. 11 on Exhibit A (indicated by "K" arrow)
- "Road near Mittenwald, Bavaria, Germany," listed as Copyrighted Work No. 12 on Exhibit A (indicated by "L" arrow)
- "Kula Highway, Maui, Hawaii," listed as Copyrighted Work No. 13 on Exhibit A (indicated by "M" arrow)
- "Man on camel, Nubian village near Aswan, Egypt," listed as Copyrighted Work No. 14 on Exhibit A (indicated by "N" arrow)
- "Market, Old Leh, Ladakh, India," listed as Copyrighted Work No. 15 on Exhibit A (indicated by "O" arrow)
- "Nubian village near Aswan, Egypt," listed as Copyrighted Work No. 16 on Exhibit A (indicated by "P" arrow)
- "Aerial view of balloons flying at Albuquerque Balloon Fiesta," listed as Copyrighted Work No. 17 on Exhibit A (indicated by "Q" arrow)
- "Paro Festival, Bhutan," listed as Copyrighted Work No. 18 on Exhibit A (indicated by "R" arrow)
- "Castle of Chillon, Montreux, Switzerland," listed as Copyrighted Work No. 19 on Exhibit A (indicated by "S" arrow)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

32.     Pinterest displayed Plaintiff's Works in connection with advertisement for a variety of other products and services.



**Image 3** (advertisements by Marriot Bonvoy, Wikibuy, and Zox circled).

33.     In the above Pinterest user's screen shot, Pinterest displayed Mr. Harrington's "A shikara (boat) on Dal Lake in Srinagar, Kashmir, Jammu and Kashmir State, India," listed as Copyrighted Work No. 8 on Exhibit A (indicated by "A" arrow), on its website to display advertisements by Marriot Bonvoy (hotel chain), Wikibuy (an internet shopping site), and Zox (wristband retailer). Pinterest also displayed "Boat with flowers, Dal Lake, Kashmir, India," listed as Copyrighted Work No. 20 on Exhibit A (indicated by "B" arrow) without attribution.



**Image 4** (advertisements by Vrbo, National Geographic, and Wikibuy circled.

34.     In the above Pinterest user's screen shot, Pinterest displayed Mr. Harrington's "Shalimar Bagh (a Mughal Garden), near Srinagar, Kashmir, Jammu and Kashmir State, India," listed as Copyrighted Work No. 21 on Exhibit A (indicated by "A" arrow), on its website to display advertisements by Vrbo (home rental company), National Geographic (a magazine), and Wikibuy (an internet shopping site). Pinterest also displayed "Shalimar Bagh, Kashmir, India," listed as Copyrighted Work No. 22 on Exhibit A Work (indicated by "B" arrow), without attribution.

35.     Pinterest's artificial intelligence displays images it associates with Mr. Harrington's photograph, which can result in Pinterest displaying an offensive and reductive collection of images.

36.     In the below Pinterest user's screen shot, Pinterest displayed Mr. Harrington's "Kara Tribe Boys with Boy Chalk Paintings On Their Bodies Jump In the Air, With Omo River Behind, Dus Village, Omo Valley, Ethiopia," listed as Copyrighted Work No. 23 on Exhibit A, on its website, then displayed a collection of images supposedly "More like this."



SECOND AMENDED CLASS ACTION COMPLAINT

**Image 5** (advertisements by NordicTrack, Inpixio, Buzznet, Ancestry, AT&T, and Jungole circled).

37.    A number of Mr. Harrington's other Works are displayed in the above screen shot (Image 5), including:

- "Nubian village near Aswan, Egypt," listed as Copyrighted Work No. 16 on Exhibit A.
- "3 Indian men, Jodhpur, India," listed as Copyrighted Work No. 24 on Exhibit A.
- "Yoga at Red Rocks, Morrison, Colorado, USA," listed as Copyrighted Work No. 25 on Exhibit A.
- "Egyptian girls, Cairo, Egypt," listed as Copyrighted Work No. 26 on Exhibit A.
- "Paro Festival, Bhutan," listed as Copyrighted Work No. 18 on Exhibit A.
- "Group of Nepalese children, Durbar Square, Patan, Nepal," listed as Copyrighted Work No. 27 on Exhibit A.
- "Embera Indian women, Panama," listed as Copyrighted Work No. 28 on Exhibit A.
- "Shikara boat, Dal Lake, Kashmir, India," listed as Copyrighted Work No. 29 on Exhibit A.
- "Market, Old Leh, Ladakh, India," listed as Copyrighted Work No. 15 on Exhibit A.
- "Bishnoi tribe, Rohat, India," listed as Copyrighted Work No. 30 on Exhibit A.
- "Rice terraces, near Sapa, Vietnam," listed as Copyrighted Work No. 31 on Exhibit A.
- "Maasai men, Amboseli National Park, Kenya," listed as Copyrighted Work No. 32 on Exhibit A.
- "Novice monk reading, Inwa, Burma," listed as Copyrighted Work No. 33 on Exhibit A.

38.    Interspersed among Plaintiff's Works are other images of native peoples and advertisements of various goods and services, including NordicTrack (a fitness equipment retailer), Inpixio (photo software, featuring images of women in bikinis), Buzznet (media site,

featuring an article about "Crazy Hygene Habits During the Wild West), Ancestry (online family history resource), and AT&T.

39.     One of the more egregious examples of commercial exploitation is the circled advertisement for Jungole's "hands' free" terrycloth "bra," which inadvertently triggers the trope of the topless native.

40.     The video on the Pinterest webpage includes the following images:

 

**Image 6**.

41.     Pinterest's artificial intelligence replicates and even exaggerates the biases of its users, whether innocuous or harmful, then commercializes them.

42.     Plaintiff did not authorize his Works to be used to advertise any of these products.

43.     Such unauthorized, commercial use of federally registered images debase the value and integrity of Plaintiff's Works and the federally registered images of people similarly situated to Plaintiff.

44.     Regardless of whether the initial "pinning" of an image by a user is fair use, Pinterest's use of that same image for advertisement campaigns is not. Moreover, there is nothing passive about how Pinterest stores, manipulates, manages, and uses those protected images.

45.     Pinterest itself copies, stores, makes derivative works of, distributes, and displays the protected images to generate ad revenue, not simply upon instigation by its users.

46.     Pinterest actively sends federally registered images via email or through its app to entice users to interact with its websites and view its paid advertisements, and it displays protected images on user's feeds along with paid advertisement.

47.     The following is an example of an email Pinterest sent on July 25, 2020, displaying Plaintiff's federally registered work, "Waikiki Beach, Honolulu, Oahu, Hawaii, USA," listed as Copyrighted Work No. 34 on Exhibit A.



**Image 7** (Plaintiff's Work circled).

48.     As a result, Pinterest does not qualify for protection from copyright infringement under the DMCA because, among other reasons, Pinterest receives a financial benefit directly attributable to its infringing activity and Pinterest has the right and ability to control such activity.

**B.      Pinterest's Removal of Copyright Management Information and Other Identifying Information**

49.     Although Pinterest may claim it merely hyperlinks images or frames hyperlinked imaged, as they exist on the internet, this simply is not true.

50.     Pinterest often displayed images with no information regarding who originally "pinned" it or from what website. And Pinterest often displayed images of Plaintiff's Works that are static and do not link back to any live website, let alone Plaintiff's website.

51.    In using pinned images for advertisement, Pinterest also deliberately stripped the images of their identifying source and/or copyright management information ("CMI").

52.    When Pinterest displayed Plaintiff's Works in the context of advertisement, Pinterest did not provide attribution or display Plaintiff's CMI. *See* Image 9 below (Pinterest user's screen shot with Plaintiff's Work circled, indicated by "A" arrow).



**Image 9**.

*See also* Images 2-4, and 7, herein, displaying Plaintiff's Works without their visible CMI.

53.    By removing any visible CMI and identifiable sources from the "pinned" images, Pinterest ensured that users would focus more on the paid advertisement. The paid advertisement contains identifying tags and live links, which made the paid advertisement stand out among Pinterest's use of stripped, often static "pinned" images.

54.    Pinterest also deliberately removed any metadata that copyright owners, like Plaintiff, embedded onto their digital images to identify and protect their works.

55.    Plaintiff adds to his photographs a type of mini database appended to the image file in a format known as the IPTC Photo Metadata Standard established by The International Press Telecommunications Council ("IPTC"). IPTC Metadata is a form of CMI.

56.     The IPTC Photo Metadata Standard is the most widely used standard for photo metadata because of its universal acceptance among news agencies, photographers, photo agencies, libraries, museums, and other related industries. The IPTC Photo Metadata Standard structures and defines metadata properties that allow users to add precise and reliable data about images.

57.     Virtually all professional photographers insert IPTC Metadata, including what is commonly known as the 4C's (Caption/description, Creator, Copyright Notice, Credit Line), onto their images in order to facilitate identifying, tracking, and protecting their images from copyright infringement.

58.     Plaintiff embeds the following 4C's in all of his digital works.

Description:          [E.g., View of Dinosaur National Monument from
                      Harper's Trail Road, Colorado, USA]

Creator:              [Blaine Harrington III]

Copyright Notice:     [E.g., Copyright 2018 Blaine Harrington III ALL RIGHTS
                      RESERVED]

Credit Line Source:   [Blaine Harrington III]

59.     He also embeds information beyond the 4C's, including his address, phone, email, website [http://www.blaineharrington.com], instructions ["This image is registered with the United States Copyright Office."], and rights/usage terms ["No usage rights of any kind are granted without authorization from Blaine Harrington III."].

60.     As explained by IPTC: "It's important that the metadata stored in an image file stays with the image. Metadata is essential for identification and copyright protection." https://iptc.org/standards/photo-metadata/photo-metadata/

61.     Certainly, Plaintiff uses the IPTC Metadata embedded into his photographs to identify and enforce his copyrights in a number of ways.

62.     For example, he uses it as the easiest way to verify that an image posted online is, in fact, his. Although he can usually identify his works simply by visual inspection, there are

1   instances that mere visual review is not enough, especially for those who assist him in identifying

2   unauthorized uses of his photographs.

3        63.     He also uses IPTC Metadata as a means of conclusively proving ownership when

4   an unauthorized user disputes ownership or the scope of permitted use of Plaintiff's photographs.

5        64.     In addition, he uses IPTC Metadata to conduct low-cost text-based searches using

6   Google for purposes of copyright enforcement.

7        65.     Google retains all IPTC Metadata in displaying images on its website. Accordingly,

8   Plaintiff can search Google Images, using the text that inserts into his IPTC Metadata. Any search

9   results for Google Images displays the creator, credit line, and copyright notice with respect to a

10  displayed photo reading the corresponding embedded IPTC Metadata fields from the image file.

11  Plaintiff or others working on his behalf then can identify those instances of his works being used

12  for commercial purposes without his authorization.

13       66.     In contrast, Pinterest did not retain IPTC Metadata during a significant portion of

14  the relevant time period of this litigation. When a user "pinned" or uploaded an image, Pinterest

15  renamed the image with a new JPEG name and stripped the IPTC Metadata from the image before

16  displaying and disseminating that image.

17       67.     Based on publicly available documents related to tests conducted by IPTC

18  regarding embedded metadata, Pinterest previously preserved embedded IPTC metadata when a

19  user uploaded an image at least in late 2015 at the time of IPTC's testing. As Pinterest established

20  its business model and generated revenue from advertisement, Pinterest ceased preserving

21  embedded IPTC Metadata. As of 2019, as confirmed by research conducted by Plaintiff's counsel

22  before the filing of this action, Pinterest no longer preserved any IPTC Metadata. In 2021, after

23  the initiation of the above-captioned lawsuit, Defendant started to preserve IPTC Metadata again.

24       68.     Removing the CMI, both visible and in the form of IPTC Metadata, and the

25  identifying source of images was Pinterest's modus operandi. Pinterest knowingly removed the

26  CMI, not only to make its paid advertisement stand out among "pinned" images that otherwise

27  would provide attribution and attention to the owners of the images, but also to induce, enable,

28  facilitate, and conceal its own infringement of copyrighted images on its website and app.

SECOND AMENDED CLASS ACTION COMPLAINT

69.     By removing the IPTC Metadata, Pinterest ensured that copyright owners could not easily identify their works on Pinterest's website and app, thereby preventing them from submitting to Pinterest comprehensive take down notices of images that fuel Pinterest's revenue.

70.     By removing what would otherwise be easily searchable CMI, Pinterest could claim ignorance of its infringement of copyrighted images. Pinterest actively thwarted the efforts of copyright owners, like Plaintiff, to police the misuse of their works on Pinterest, then put the onus on copyright holders to identify and object to each instance of specific infringement. Pinterest ensured that copyright owners face insurmountable time and effort to take down the hundreds of thousands, if not millions, of instances of improper use of their copyrighted works on Pinterest's website and app, which exponentially multiply by the hour.

71.     There are tens of thousands, if not hundreds of thousands, of Plaintiff's works displayed on Pinterest's website and app without authorization and for improper purposes. Plaintiff's works appear in connection with the following geographic subjects found on Pinterest: Argentina, Australia, Belgium, Bermuda, Bhutan, Burma (or Myanmar), Botswana, Brazil, Canada (including provinces such as British Columbia, Manitoba, Nova Scotia, Prince Edward Island), Chile, China, Costa Rica, Curacao, the Czech Republic, Dubai, Egypt, England, Ethiopia, Fiji, French Polynesia, Germany, Greece, Guatemala, Hong Kong, Hungary, India, Indonesia, Ireland, Israel, Italy, Japan, Jordan, Kenya, Mexico, Morocco, Namibia, Nepal, New Caledonia, New Zealand, Panama, Peru, Portugal, Russia, Scotland, South Africa, South Korea, Sweden, Switzerland, Tibet, Thailand, Trinidad, Turkey, and the United States (including states such as Alaska, Arizona, California, Colorado, Florida, Hawaii, Kansas, Kentucky, Louisiana, Nevada, New Mexico, New York, South Dakota, Texas, Utah, Washington DC, Wyoming and cities such as Albuquerque, Las Vegas, San Francisco).

72.     Plaintiff's works appear also in connection with such diverse subjects found on Pinterest as: American Indian, Big Bend, Kashmir, Maasai, Maori, Bat, Hot Air Balloon, and Polar Bear.

73.     For copyright holders, Pinterest is not a harmless social media platform for users "to find the inspiration to create a life they love." Rather, for professional artists like Plaintiff,

Pinterest makes it exponentially more difficult to maintain the livelihood they love. Pinterest devalues copyrighted works and deprives copyright holders of the protections afforded to them by federal law, all to increase Pinterest's advertisement revenue.

**C.   There Are Numerous Similar Misuses of Federally Copyrighted Images and Improper Removal of CMI**

74.   Plaintiff is not the only person to have been damaged due to Defendant's misconduct. There are numerous other registered copyright holders whose works are misused and numerous instances in which CMI is removed or altered by Pinterest.

75.   For example, Harold Davis is a renowned digital artist and award-winning professional photographer based in Berkeley, California. Mr. Davis is the author of many bestselling photography books. Mr. Davis' photographs have been licensed by art publishers, corporations, and online and print publications throughout the world, and his works have been exhibited in venues worldwide.

76.   Mr. Davis registers his works and registered "Into the Vortex of the Universe" with the United States Copyright Office on October 22, 2013 (Registration No.: VA 2-010-614).



**Image 10** (advertisements circled).

77. As seen in the above Pinterest user's screen shot, Pinterest used Plaintiff's "Into the Vortex of the Universe" (indicated by "A" arrow) with no attribution and stripped of his CMI, to promote the wares of PetSmart, Minted (a stationary and paper goods retailer) and Wayfair (a furniture and home decoration retailer). The use of Mr. Davis' federally registered image to sell cheaper knockoffs of his work on Minted and Wayfair causes him economic damage.

78. In April 2019, Mr. Davis contacted Pinterest's Chief Executive Officer ("CEO") Ben Silberman via email stating, in part:

> I am writing you as the CEO of Pinterest. As a practicing artist and photographer trying to support my family as best I can, for quite a long while I have been distressed about the use of my images on Pinterest, which literally is in the thousands of images and tens of thousands (or hundreds of thousands) of usages. Many, or most, of these usages are without attribution or link-backs.

79. Mr. Davis also had communications with Ally Boutelle, Intellectual Property Operations Manager at Pinterest, in April, May and June 2019 regarding the misuse of his Works on Pinterest and Pinterest's disingenuous use of its DMCA takedown notice to insulate itself from accountability to copyright owners such as himself.

80. Despite these communications with Pinterest's senior management, Pinterest continues to infringe Mr. Davis' protected works.

81. Nick Koudis is a photographic artist based in New York City and Los Angeles. Mr. Koudis makes his living from the sale and licensing of his visual works. He has been commissioned for national advertisement campaigns and magazine covers for Netflix, American Express, Comedy Central, Visa, Doublemint, Foster's Beer, Time Magazine, Wired, and many other clients.

82. He federally registers his works. Mr. Koudis filed an application to register the work, "Ironic Death No. 1, Seat Belt Distraction," with the United States Copyright Office, which registration is expected to issue shortly.

83. As seen in the below Pinterest user's screen shot, Pinterest displayed "Ironic Death No. 1, Seat Belt Distraction," on its website to advertise merchandise and wares, including, but not limited to diaper bags and dog food:



**Image 11** (advertisements by FruitBaby and Rachel Ray Nutrish circled).

84.    David Oppenheimer is a photographic artist based in Asheville, North Carolina. Mr. Oppenheimer makes his living from the sale and licensing of his visual works. His photographs have been used on and by national network television, *National Geographic*, *Rolling Stone* magazine, NBC, Goldman Sachs, HBO Sports, and on display at the Museum of the City of New York.

85.    Mr. Oppenheimer federally registers his work. Mr. Oppenheimer registered the work, "White Mountain," with the United States Copyright Office on October 22, 2013 (Registration No.: VAu 1-151-075).

86.    As seen in the below Pinterest user's screen shot, Pinterest displayed "White Mountain," on its website to advertise merchandise and wares, including, but not limited to PMS medication, household goods, and party supplies:

SECOND AMENDED CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11



12   **Image 12** (advertisements by Bonafide Health, Purple, and PartyCity circled).

13         87.    Stewart Marsden is a professional photographer based in London, England. Mr.

14   Marsden makes his living from the sale and licensing of his visual works. His photographs have

15   been used internationally and published in many publications, including *The Royal Photographic*

16   *Society* and *National Geographic*. Mr. Marsden's photography also has been used to create special

17   effects sequences for cinema.

18         88.    Mr. Marsden federally registers his works. Mr. Marsden registered the work,

19   "Westminster," with the United States Copyright Office on January 31, 2008 (Registration No.:

20   VA 2-085-861).

21         89.    Mr. Marsden's work was "pinned" and used without permission by a Pinterest

22   user, "City Car Rentals," to advertise its rental car services on Pinterest. Pinterest also displayed

23   Mr. Marsden's work its website to advertise merchandise and wares, including, but not limited to

24   China tour services. *See* Pinterest user's screen shot below.

25
26
27
28

SECOND AMENDED CLASS ACTION COMPLAINT



**Image 13** (advertisement by City Car Rentals and lotustour 365 circled).

90.     Pinterest copied, stored, made derivative works of, distributed, and displayed countless other images that are federally registered without the permission of the copyright holder for non-fair use purposes.

91.     In line with its modus operandi, Pinterest deliberately stripped "pinned" images, including those cited above, of their identifying source and/or CMI, including IPTC Metadata, when Pinterest uploaded, stored, made derivative works of, and displayed the images.

SECOND AMENDED CLASS ACTION COMPLAINT

**D.**     **Plaintiff's Allegations Have Been Confirmed through Investigation and/or Non-Confidential Discovery**

92.     Harold Davis, a putative class member in this case, is an individual plaintiff a case pending in this District, *Davis v. Pinterest, Inc.*, Civil Case No.: 4:19-cv-7650-HSG (TSH) (N.D. Cal.). The parties in the *Davis* action have engaged in extensive discovery, and the non-confidential information learned through independent investigation and discovery confirms Plaintiff's allegations and the appropriateness of class treatment of his claims.

93.     Pinterest employs consistent and uniform technology with respect to all images uploaded, stored, and displayed on its websites and app.

94.     Pinterest displays images for commercial purposes. Images displayed by Pinterest are integral to generating advertising revenue. Images displayed by Pinterest on its website and app are embedded with data that Pinterest's artificial intelligence uses to track how a user interacts with content on Pinterest's website and app. With machine learning, Pinterest serves to its user what Pinterest calls "Organic Pins" (*i.e.*, displayed images derived from content that its users pinned) and "Promoted Pins" (*i.e.*, displayed images derived from content that advertisers pay Pinterest to promote) with the goal that both will be relevant or of interest to the user.

95.     Pinterest users cannot opt out of viewing Promoted Pins, and users have no control over how the Organic Pins and Promoted Pins are organized and displayed to them.

96.     Much of the information that is embedded into the images that Pinterest displays on its website and app are derived from the data already found in the images originally uploaded by users. From at least 2019 until 2021, Pinterest did not code its displayed images with any IPTC Metadata embedded in the images originally uploaded by users, even though Pinterest did code onto the displayed images other data found on the images originally uploaded by users.

97.     Pinterest claimed in the *Davis* action that it would be unduly burdensome for it to identify Mr. Davis' works displayed by Pinterest by any of the information such as his name and the name of the work, which he includes in the IPTC Metadata that he embeds into his photographs and which he provided to Pinterest in his complaint.

98.     Pinterest initially claimed that the only manner in which it could identify Mr. Davis' works displayed on its website and app would be for Mr. Davis to provide specific URL addresses where his works appear on Pinterest.

99.     Specifically, Mr. Davis posed the following interrogatory:

Identify every instance in which Works have been Pinned, uploaded, downloaded, displayed or otherwise used on or through the Pinterest Platform. If you cannot identify every instance, explain why.

100.    In response, Pinterest stated in relevant part:

Plaintiff has not provided uniform resource locators (URLs) or Pin IDs for alleged infringements on Pinterest of the 51 images that he claims are at issue in the SAC. Without such information, Pinterest does not know whether the images that Plaintiff claims to own and claims are at issue can be found among the billions of images that users have posted on the Pinterest service.

101.    Pin IDs is a numerical value that Pinterest assigns to a Pin and is found at the end of the URL of a Pin.

102.    After Mr. Davis objected to this response and engaged in motion practice to compel Pinterest to provide a more fulsome response, Plaintiff then amended its response in part as follows (emphasis added):

There are billions of images accessible on the Pinterest service. While the service offers a public-facing keyword search capability, that search capability does not use image-matching technology. Conducting manual keyword searches of the corpus of images on the service using search terms that Defendant would have to devise in the hopes of finding images that match the works that Plaintiff has put at issue in this case would not only be an enormously time consuming process, but would generate highly over- and potentially under-inclusive results. *That is especially so since the persons charged with performing these searches would have to review many thousands of results for each search and would not know by looking at a given image in the results whether it was in fact one of the specific works that Plaintiff has put at issue …*

103.    Pinterest presumably would have the same response regarding its ability to search for Plaintiff's Works, or any other putative class member's works, in this litigation or any copyright infringement litigation. This is Defendant's modus operandi to induce, enable, facilitate, and/or conceal infringement. Pinterest was aware or had reasonable grounds to be aware that the effect of removing IPTC Metadata would be to hinder the efforts of copyright holders to effectively enforce their copyrights against Pinterest. Pinterest was aware or had reasonable grounds to be

aware that proving copyright infringement and authenticating evidence of infringement is far more difficult without documentation of infringement produced from its own records.

104.    In other words, the only reason Pinterest could claim in copyright litigation that it "does not know whether the images that Plaintiff claims to own and claims are at issue can be found among the billions of images that users have posted on the Pinterest service" and claim that textual searches would require someone to "review many thousands of results for each search [by someone who] would not know by looking at a given image in the results whether it was in fact one of the specific works that Plaintiff has put at issue" is because Pinterest deliberately chose to omit in coding of its displayed images the very information that would obviate this common defense. The very purpose of the IPTC Metadata that Plaintiff and other professional photographers embed into their images is to easily and conclusively identify their copyrighted works and enforce their copyrights.

105.    Because its displayed images are the drivers of Pinterest's revenue, Defendant is loath to disable them or otherwise limit their use.

106.    The inescapable conclusion is that, although it appears that Pinterest previously preserved IPTC Metadata, Pinterest then deliberately stopped including IPTC Metadata in its displayed images in order to claim ignorance of its infringement of copyrighted images, to avoid having to take down all displayed images created from a copyrighted image, and to thwart the enforcement of copyrights. Pinterest has provided no plausible explanation of why it did not include IPTC Metadata onto its displayed images from at least 2019 to 2021, even though Pinterest did preserve IPTC Metadata at some point previously, the IPTC organization had urged website operators to do so, and other online companies, in fact, did so.

107.    Had Pinterest encoded its displayed images with IPTC Metadata, it would not need specific URLS or Pin IDs in order to execute takedown notices or respond to discovery requests. It would not need complex image-matching technology (which may nonetheless misidentify images) to locate copyrighted works on its websites and app. Photographers, who are copyright holders, could identify their work by their name or other CMI that they embed as a matter of course into IPTC Metadata. Pinterest could then use simple textual searches of IPTC Metadata to identify

all displayed images that contain such CMI, whether to remove any infringing uses of such displayed images or to produce in discovery evidence of all uses of the displayed images.

108.    After the filing of this action and the *Davis* action, Pinterest changed its practices in 2021 to code IPTC Metadata found in the original image uploaded by its users onto the images Pinterest displays on its website and app. Pinterest was able to change its handling of IPTC Metadata in a matter of months.

### E.    CLASS ALLEGATIONS

109.    Plaintiff brings this action individually and on behalf of the following three classes pursuant to Rule 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

#### The Copyright Infringement Class

All persons in the United States whose federally registered copyrighted works Pinterest copied, stored, made derivative works of, distributed, and/or displayed for commercial purposes by Defendant on Defendant's websites or app without authorization from November 19, 2016 to the date of judgment (collectively, "the Copyright Infringement Class").

#### The DMCA Class

All persons in the United States whose CMI was removed or altered by Defendant when Defendant made derivative works of and/or displayed their images from November 19, 2016 to the date of judgment (collectively, "the DMCA Class").

Excluded from the Copyright Infringement Class and the DMCA Class (collectively, "the Classes") are officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, and their legal representatives, heirs, successors or assigns and any entity in which they have or have had a controlling interest; governmental entities; and, the Court, the Court's immediate family, and the Court's staff.

110.    Plaintiff reserves his right to redefine the Classes prior to certification.

111.    This action is brought and may properly be maintained as a class action pursuant to Federal Rule of Civil Procedure 23. This action satisfies the numerosity, typicality, adequacy, predominance, and superiority requirements of those provisions. The Classes are so numerous that the individual joinder of all of its members is impracticable. Due to the nature of Defendant's websites and app, Plaintiff believes the total number of Class members is in the thousands and members of the Classes are geographically dispersed across the United States of America.

SECOND AMENDED CLASS ACTION COMPLAINT

Although the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery.

112.    Common questions of law and fact exist as to all members of the Classes, and these common questions predominate over any questions affecting only individual members of the Classes. These common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any Class member include, but are not limited to, the following:

(a)    Whether Defendant's use of the Classes' federally registered images to provide targeted advertisement and promotion for third parties and itself on and through its websites and app violated the Copyright Act;

(b)    Whether Defendant's violation of the Copyright Act was willful;

(c)    Whether Defendant had a license to commercially exploit the Classes' federally registered copyrighted works;

(d)    Whether Defendant's use of the Classes' federally registered copyrighted works constitutes fair use;

(e)    Whether Defendant intentionally removed or altered CMI when it made derivative works of and/or displayed the Classes' copyrighted works on its websites and app;

(f)    Whether Defendant knew or had reasonable grounds to know that the removal of CMI would induce, enable, facilitate, or conceal copyright infringement;

(g)    Whether Plaintiff and the members of the Classes have been damaged by the actions or conduct of Defendant;

(h)    Whether injunctive relief is appropriate; and

(i)    The proper measure of damages.

113.    Plaintiff's claims are typical of those of the Classes because Pinterest employed consistent and uniform technology with respect to all images displayed on its websites and app. Like all members of the Classes, Pinterest copied, stored, made derivative works of, distributed

and/or displayed Plaintiff's federally registered copyrighted works for commercial purposes without authorization; the CMI on Plaintiff's works were intentionally and knowingly removed or altered by Defendant when Defendant made derivative works of and displayed Plaintiff's works; and he sustained damages from Defendant's wrongful conduct.

114.   Plaintiff will fairly and adequately protect the interests of the Classes and has retained counsel who are experienced in intellectual property and in litigating class actions. Plaintiff has no interests that conflict with those of the Classes.

115.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Individual joinder of all members of the Classes is impracticable. Even if individual members of the Classes had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all Class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the Classes. Furthermore, for many, if not most, a class action is the only feasible mechanism that allows an opportunity for legal redress and justice.

116.   This action is maintainable as a class action under Federal Rule of Civil Procedure 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief respecting the Classes as a whole.

117.   This action is maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3) because the common questions of law and fact identified above, without limitation, predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

1

## CAUSES OF ACTION

2

### FIRST CAUSE OF ACTION

3
**Infringement of Copyright On Behalf of Plaintiff and the Copyright Infringement Class**

4
118.     Plaintiff repeats each and every allegation contained in the paragraphs above and

5
incorporates such allegations by reference herein.

6
119.     Plaintiff and the Copyright Infringement Class are, and at all relevant times have

7
been, the sole copyright owners of their federally registered works.

8
120.     Defendant, without the permission or consent of Plaintiff or the Copyright

9
Infringement Class, copied, stored, made derivative works of, distributed, and/or publicly

10
displayed their federally registered, copyright protected works. Defendant's acts violated the

11
exclusive rights of Plaintiff and the Copyright Infringement Class under the Copyright Act.

12
121.     Defendant's actions constitute infringement of the copyrights of Plaintiff and the

13
Copyright Infringement Class under the Copyright Act.

14
122.     Plaintiff is informed and believes the foregoing act of infringement was willful and

15
intentional in disregard of and with indifference to the rights of Plaintiff and the Copyright

16
Infringement Class.

17
123.     Each creation of derivative works and their dissemination on and through

18
Defendant's websites and app constitutes a separate and distinct act of infringement under the

19
Copyright Act.

20
124.     Pursuant to 17 U.S.C. § 504(c)(1), Plaintiff and the Copyright Infringement Class

21
are entitled to the minimum statutory damages of $750 per work infringed by Defendant. Plaintiff

22
and the Copyright Infringement Class also seek up to $30,000 per work infringed by Defendant as

23
allowed under 17 U.S.C. § 504(c)(1), or such other amounts as may be deemed proper by the Court

24
under 17 U.S.C. § 504(c)(1).

25
125.     Based upon Defendant's willful violation of the Copyright Act, Plaintiff and the

26
Copyright Infringement Class also seek statutory damages – concurrent with damages awarded

27
pursuant to 17 U.S.C. § 504(c)(1) – of $150,000 per work infringed by Defendant, or such other

28
amounts as may be deemed proper by the Court under 17 U.S.C. § 504(c)(2).

126.     Plaintiff and the Copyright Infringement Class are entitled to their actual damages, which include all of Defendant's profits derived from the infringement of their federally registered works in amounts to be proven at trial. In addition, Plaintiff and the Class are entitled to costs and reasonable attorneys' fees in prosecuting this action pursuant to 17 U.S.C. § 505.

**SECOND CAUSE OF ACTION**
**Violation of the DMCA On Behalf of Plaintiff and the DMCA Class**

127.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

128.     Section 1202(b) of the DMCA, 17 U.S.C. § 1202(b), states:

> No person shall, without the authority of the copyright owner or the law
>
> (1) intentionally remove or alter any copyright management information,
>
> (2) distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or
>
> (3) distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law,
>
> knowing, or, ... having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

17 U.S.C. § 1202(b).

129.     Pinterest intentionally and knowingly removed or altered the CMI from the works of Plaintiff and the DMCA Class when it uploaded, stored, made derivative works from, and/or displayed those works on its website or app.

130.     Pinterest knowingly removed or altered the CMI to induce, enable, facilitate, or conceal infringement of the works of Plaintiff and the DMCA Class.

131.     Each removal or alteration of the CMI of the works of Plaintiff and the DMCA Class constitutes a separate and distinct act of violation of § 1202(b) of the DMCA.

132.     Pursuant to 17 U.S.C. § 1203(c)(3), Plaintiff and the DMCA Class are entitled to a minimum of $2,500 for each violation of section §1202 and up to a maximum statutory damages

of $25,000 with respect to each instance the CMI of Plaintiff and the other members of the DMCA Class was removed or altered by Defendant, or such other amounts as may be deemed proper under 17 U.S.C. § 1203(c)(3).

133.    Plaintiff and the DMCA Class are entitled to their actual damages in amounts to be proven at trial pursuant to 17 U.S.C. § 1203(c)(2). In addition, Plaintiff and the Class are entitled to costs and reasonable attorneys' fees in prosecuting this action pursuant to 17 U.S.C. § 1203(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the members of the Classes, respectfully requests the Court to enter an Order:

A.    certifying the proposed Classes under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), as set forth above;

B.    declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

C.    declaring that Defendant has committed the violations of the Copyright Act and Section 1202(b) of the DMCA as alleged herein;

D.    providing for any and all injunctive relief the Court deems appropriate;

E.    awarding statutory damages as provided for in the Copyright Act and the DCMA;

F.    awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount the Court or jury will determine, in accordance with applicable law;

G.    Awarding Plaintiff his costs and reasonable attorney's fees in this action, pursuant to the Copyright Act and the DMCA; and

H.    Awarding Plaintiff such other and further relief as is just and proper.

1

## **JURY DEMAND**

2          Plaintiff hereby demands a trial by jury on all claims for which there is a right to jury

3    trial.

4

5    Dated: October 17, 2021                          **REESE LLP**

6                                                      */s/ Michael R. Reese*
                                                       Michael R. Reese (Cal. State Bar No. 206773)
7                                                      Sue J. Nam (Cal. State Bar No. 206729)
                                                       100 West 93rd Street, 16th Floor
8                                                      New York, New York 10025
                                                       Telephone: (212) 643-0500
9                                                      Facsimile: (212) 253-4272
                                                       Email: *mreese@reesellp.com*
10                                                             *snam@reesellp.com*

11                                                     *Attorneys for Plaintiff and the Proposed Class*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SECOND AMENDED CLASS ACTION COMPLAINT