**REESE LLP**
Sue J. Nam (State Bar No. 206729)
Michael R. Reese (State Bar No. 206773)
*snam@reesellp.com*
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile:  (212) 253-4272

**REESE LLP**
Charles D. Moore (admitted *pro hac vice*
100 South 5th Street, Suite 1900
*cmoore@reesellp.com*
Minneapolis, Minnesota 55402
Telephone: (701) 390-7214
Facsimile:  (212) 253-4272

*Counsel for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| BLAINE HARRINGTON III, *on behalf of himself and all others similarly situated*, <br><br> Plaintiff, <br><br> vs. <br><br> PINTEREST, INC., <br><br> Defendant. | CASE NO.: 5:20-cv-05290-EJD <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANT PINTEREST, INC.'S MOTION TO DISMISS COUNT II OF THE SECOND AMENDED CLASS ACTION COMPLAINT** <br><br> DATE:   March 17, 2022 <br> TIME:    9:00 a.m. <br> DEPT:    Courtroom 4, 5th Floor <br> JUDGE:  Hon. Edward J. Davila |

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ........................................................................................................ 1

BACKGROUND .......................................................................................................... 2

I.      New Factual Allegations Support Plaintiff's Section 1202(b) Claim that
        Pinterest Acted with Requisite Scienter .................................................... 4

        A.      Plaintiff Sufficiently Alleges Pinterest Knew that It Removed CMI
                Without Plaintiff's Authority When It Removed IPTC Metadata .............. 5

        B.      Plaintiff Sufficiently Alleges that Pinterest Knew or Had Reason to
                Know that Its Removal of IPTC Metadata Will Conceal Its Own
                Infringement ........................................................................................... 10

        C.      Pinterest Cannot Refute the Inference of Unlawful Scienter .................... 14

CONCLUSION ........................................................................................................... 17

1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

2

3

**CASES**

4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 13

5

*Brown v. Stroud*, No. C08-02348-JSW, 2011 WL 2600661 (N.D. Cal. June 30, 2011) ............... 8

6

*BWP Media USA Inc. v. Polyvore, Inc.*, 922 F.3d 42 (2d Cir. 2019) ............................................ 8

7

8

*Daar v. Oakley, Inc.*, No. CV 18-6007 PA (KSX),
        2018 WL 9596129 (C.D. Cal. Sept. 27, 2018) ............................................................. 9

9

*Davis v. Pinterest*, Case No. 4:19-cv-07650-HSG (N.D. Cal.) ............................................ passim

10

*Free Speech Systems, LLC v. Menzel*, 390 F. Supp.3d 1162 (N.D. Cal. 2019) ........................... 6

11

12

*Gardner v. CafePress Inc.*, No. 3:13–cv–1108–GPC–JMA,
        2014 WL 794216 (S.D. Cal. Feb. 26, 2014) ............................................................... 8

13

*Gordon v. Nextel Commc'ns & Mullen Advert., Inc.*, 345 F.3d 922 (6th Cir. 2003) .................... 9

14

15

*Greg Young Publ'g, Inc. v. CafePress, Inc.*, No. 15-CV-6013,
        2016 WL 6106752 (C.D. Cal. Jan. 25, 2016) .............................................................. 9

16

17

*Kelly v. Arriba Soft Corp.*, 77 F.Supp.2d 1116, 1122 (C.D. Cal. 1999),
        *aff'd and rev'd in part*, 336 F.3d 811 (9th Cir. 2003) .............................................. 15

18

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005) .......................................................... 7

19

*Mango v. BuzzFeed, Inc.*, 970 F.3d 167 (2d Cir 2020) ............................................... 5, 9

20

*Michael Grecco Products., Inc. v. Alamy, Inc.*, 372 F. Supp. 3d 131 (E.D.N.Y. 2019) ................ 9

21

22

*Mills v. Netflix, Inc.*, No. CV 19-7618-CBM-AGRx,
        2020 WL 548558 (C.D. Cal. Feb. 3, 2020) ................................................................. 6

23

24

*Monotype Imaging, Inc. v. Bitstream, Inc.*, No. 03 C 4349,
        2005 WL 936882 (N.D. Ill. Apr. 21, 2005) ............................................................... 10

25

*Penske Media Corp. v. Shutterstock, Inc.*, -- F.Supp.3d --,
        1:20-cv-04583 (MKV), 2021 WL 2894809 (S.D.N.Y. Aug. 9, 2021) ...................................... 10

26

27

*Philpot v. Alternet Media, Inc.*, No. 18-cv-04470-YSH,
        2018 WL 6267876 (N.D. Cal. Nov. 30, 2018) ............................................................... 6

28

*Philpot v. WOS, Inc.*, No. 1:18-CV-339-RP,
    2019 WL 1767208 (W.D. Tex. Apr. 22, 2019) ..................................................................... 8, 9

*Robbins v. Oakley, Inc.*, No. CV 18-5116 PA (KSX),
    2018 WL 5861416 (C.D. Cal. Sept. 27, 2018) ......................................................................... 9

*Spinelli v. Nat'l Football League*, 903 F.3d 185 (2d Cir. 2018) ..................................................... 6

*Stevens v. Corelogic, Inc.*, 899 F.3d 666 (9th Cir. 2018).................................................... passim

*Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597 (9th Cir. 2018)...................................... 8

**STATUTES**

17 U.S.C. § 1202(b) ................................................................................................... passim

1   Plaintiff Blaine Harrington III, by and through his undersigned counsel of record,

2   respectfully submits this opposition to Defendant Pinterest, Inc.'s Motion to Dismiss Count II of

3   Plaintiff's Second Amended Complaint ("Def. Mot."), ECF No. 51.

4   **INTRODUCTION**

5   In his Second Amended Complaint ("SAC," ECF No. 49), Plaintiff addressed what this

6   Court found deficient in his prior pleading with respect to his claim under 17 U.S.C. § 1202(b).

7   *See* Am. Order Granting Mot. to Dismiss (the "Order," ECF No. 40) at 9-12.

8   The Court pointed out in its Order that Plaintiff's prior complaint did not contain "any

9   allegations that he actually used CMI metadata to prevent or detect copyright infringement . . . ."

10  *Id.* at 11. In his SAC, Plaintiff now confirms that he adds to all of his digital photographs a type of

11  mini database in a metadata format established by The International Press Telecommunications

12  Council ("IPTC"). SAC ¶ 55. IPTC Metadata is a form of CMI, *id.*, and Pinterest does not contend

13  otherwise. Plaintiff states that he uses the IPTC Metadata embedded into his photographs to

14  identify and enforce his copyrights. *Id.* at ¶ 61. More specifically, Plaintiff uses the IPTC Metadata

15  that he embeds in all of his copyrighted works "as the easiest way to verify that an image posted

16  online is, in fact, his" because "mere visual review" is not always sufficient to identify his works.

17  *Id.* at ¶ 62. He also uses IPTC Metadata as a means of conclusively proving ownership when an

18  unauthorized user disputes ownership or the scope of permitted use of Plaintiff's photographs. *Id.*

19  at ¶ 63.[1] In addition, Plaintiff uses IPTC Metadata to conduct low-cost text-based searches using

20  Google for purposes of copyright enforcement because Google retains all IPTC Metadata in

21  displaying images on its website, unlike Pinterest during a significant portion of the relevant time

22  period of this litigation. *Id.* at ¶¶ 64-66.

23  ---

[1] Pinterest points out that Plaintiff is a "serial copyright litigant who has filed dozens of copyright

24  infringement cases around the country." Def. Mot. at 3. If anything, this fact supports Plaintiff's

25  allegations that he uses IPTC Metadata as an effective means of policing his copyrights and

26  proving ownership in the copyright actions he brings.

27

28

The Court in its Order also found that Plaintiff "does not allege any facts to show that Pinterest's alleged distribution of photographs induced, enabled, facilitated or concealed any particular act of infringement by anyone, let alone a pattern of such infringement likely to recur in the future." Order at 11-12 (citing *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 675 (9th Cir. 2018)). However, at issue in the SAC is Pinterest's own actions of infringement—not those of third parties. And as to its own actions, Pinterest cannot claim ignorance. Pinterest intentionally removed IPTC Metadata, and it strains credulity that it did not know IPTC Metadata contains CMI. After all, Pinterest changed its treatment of IPTC Metadata over the course of the past six years. It first retained IPTC Metadata, then removed it, and now retains it again. SAC ¶ 67. It makes no sense that Pinterest would change its conduct specifically as to IPTC Metadata without any knowledge about IPTC Metadata or that its very purpose is to manage copyright information in photographs.

Plaintiff also alleges in his SAC sufficient facts to show Pinterest knew or had a reasonable basis to know that its decision to cease retaining IPTC Metadata will facilitate or conceal its own copyright infringement. Pinterest's objections to discovery requests in *Davis v. Pinterest*, Case No. 4:19-cv-07650-HSG (N.D. Cal.), cited in the SAC, demonstrates how Pinterest deliberately thwarted the efforts of Mr. Davis, a putative class member, to police and protect his rights against Pinterest's misuse of his works. SAC ¶¶ 92-108. Pinterest systematically removed the very information that professional photographers like Plaintiff, Mr. Davis, and other members of the putative class use to easily identify their works. Pinterest then refused to produce highly relevant evidence of its direct infringement, claiming that it cannot identify specific copyrighted works among the billions of images on its platform. *Id.*

Because Plaintiff has alleged new factual allegations to sufficiently establish Pinterest's scienter at the pleading stage, Plaintiff's Section 1202(b) claim should be permitted to proceed along with his direct copyright claim, which is not the subject of any motion to dismiss.

## BACKGROUND

Plaintiff originally filed his SAC on September 30, 2021. ECF No. 43. Because Pinterest had designated certain information as confidential in the *Davis* matter, Plaintiff made its filing of its original SAC with redactions and filed an administrative motion to partially seal the document.

Pinterest objected to the filing, claiming that the document contained confidential materials obtained in *Davis*. *See* ECF Nos. 45 and 46. Based on Pinterest's contentions, this Court ordered that the initial filing be removed and granted leave to resubmit it without "any allegations that contain or are derived from information designated under the protective order" in *Davis*. *See* ECF No. 48 at 1. What now has become abundantly clear is that Pinterest improperly designated information as "confidential" and "highly confidential" in the *Davis* matter. **Nothing** in the original SAC was subject to the protective order in *Davis*.

Pinterest filed declarations in *Davis* requesting that the Court seal **nothing** in the plaintiff's briefs, which were redacted just as the original SAC based on Pinterest's broad designations of confidentiality in *Davis*. Indeed, Pinterest backtracked its designations to the point of requesting to seal only a few lines of deposition transcripts and a few internal documents, none of which were incorporated into Plaintiff's original SAC. *See* Declaration of Henry Lien, dated November 12, 2021, attached as Exhibit A to the Declaration of Sue J. Nam ("Nam Decl.") filed herewith; Declaration of Henry Lien, dated November 24, 2021, attached as Exhibit B to Nam Decl., and Declaration of Andrew T. Kramer, dated December 3, 2021, attached as Exhibit C to Nam Decl.

Pinterest's declarant stated under oath to this Court that "there are compelling reasons that the information contained on pages 25:7-27; 27:12; 27:16-28:3; and 28:12-14 of the original Second Amended Complaint" be redacted because Plaintiff's allegations "reflect back-end, non-public operational choices that Pinterest has made over the course of many years to arrive at what it believes to be the most effective and efficient way to operate a user-generated content service at a virtually unparalleled scale." Declaration of Andrew T. Kramer in Support of Plaintiff Blaine Harrington III's Administrative Motion to Seal, dated December 3, 2021, ECF No. 45, ¶ 11.

Pinterest explained:

> 12.    For example, 25:26-27 describes Pinterest's policy regarding analytics about content on its service, and 27:19-23 directly quotes from training materials that Pinterest has developed after discussion with stakeholders and counsel regarding the best ways to balance the interests of all parties and ensure its compliance with the Digital Millennium Copyright Act. Pinterest believes that the disclosure of this information has the potential to lead to third-party abuse, the unjustified removal of user-generated content from the

service and/or create undue burden, delay, and risk for Pinterest's copyright operations team.

13.     Plaintiff also purports to describe technical aspects of Pinterest's image processing platform and machine learning models (25:7-25), which sit at the core of Pinterest's business and are the product of considerable investments of Pinterest's time, money, and personnel. Other allegations detail Pinterest's past and present practices regarding the handling and processing of user-generated content (e.g., 25:22-25; 28:1-2; 28:12-14), which practices I am informed and believe are the result of practical considerations, questions of scale and user utility, as well as business decisions made within the company.

*Id.* at ¶ 12, 13. However, this is the exact same information that was discussed at length in the briefing on the parties' cross motion for summary judgment in *Davis*, which Pinterest conceded is **not** confidential and need not remain under seal as part of the summary judgment proceedings. Indeed, the same declarant stated that Pinterest does not contend that documents should remain under seal as part of these summary judgment proceedings. *See* Exhibit C to Nam Decl.

Thus, it was Pinterest, not Plaintiff, that violated the protective order. *See* Exhibit D to Nam Decl., Stipulated Protective Order entered in *Davis*, ECF No. 70, at ¶ 5.1 ("Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber or retard the case development process or to impose unnecessary expenses and burdens on other Parties) expose the Designating Party to sanctions."). Pinterest's attempt to obfuscate the truth with improper confidentiality designations is typical of the way it tries to conceal its direct infringement.

## I.   New Factual Allegations Support Plaintiff's Section 1202(b) Claim that Pinterest Acted with Requisite Scienter

Analyzing the statutory language, the Second Circuit explained the double-scienter requirement of the DMCA.

The DMCA's first scienter element requires that a defendant distributing copyrighted material have actual knowledge that CMI "has been removed or altered without authority of the copyright owner or the law." 17 U.S.C. § 1202(b).

The second scienter element of the DMCA requires that a defendant know or have reason to know that distribution of copyrighted material despite the removal of CMI "will induce, enable, facilitate, or conceal an infringement." *Id.*

*Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 172 (2d Cir 2020). Based on the statutory language, the Second Circuit rejected "the argument that a defendant must know or have reason to know about likely future infringement by third parties" and instead concluded that the statute "also encompasses an infringement committed by the defendant himself." *Id.*

Here, the SAC provides new factual allegations with respect to both scienter requirements that (1) Pinterest intentionally removed CMI when it removed IPTC Metadata and (2) Pinterest knew or had reason to know that its removal of IPTC Metadata will facilitate or conceal its own copyright infringement.

### A.   Plaintiff Sufficiently Alleges Pinterest Knew that It Removed CMI Without Plaintiff's Authority When It Removed IPTC Metadata

With respect to the first scienter requirement, Plaintiff alleges that Pinterest "deliberately removed any metadata that copyright owners, like Plaintiff, embedded onto their digital images to identify and protect their works," specifically IPTC Metadata, which "is a form of CMI." SAC at ¶¶ 54-55. The SAC alleges that the IPTC Photo Metadata Standard is the most widely used standard for photo metadata because of its universal acceptance among news agencies, photographers, photo agencies, libraries, museums, and other related industries. *Id.* at ¶ 56. Virtually all professional photographers insert IPTC Metadata, including what is commonly known as the 4C's (Caption/description, Creator, Copyright Notice, Credit Line), onto their images in order to facilitate identifying, tracking, and protecting their images from copyright infringement. *Id.* at ¶ 57. Indeed, Plaintiff embeds the 4C's in **all** of his digital works, as well as his address, phone, email, website address, and the statements that "[t]his image is registered with the United States Copyright Office" and "[n]o usage rights of any kind are granted without authorization from Blaine Harrington III." *Id.* at ¶¶ 58-59. As explained by the IPTC: "It's important that the metadata stored in an image file stays with the image. Metadata is essential for identification and copyright protection." *Id.* at ¶ 60 (citing https://iptc.org/standards/photo-metadata/photo-metadata/). Moreover, other websites—notably Google—retains all IPTC Metadata in displaying images on its websites. *Id.* at ¶ 65.

1        This is hardly the type of vague allegations of unspecified metadata at issue in *Mills v.*

2  *Netflix, Inc.*, No. CV 19-7618-CBM-AGRx, 2020 WL 548558, at *3 (C.D. Cal. Feb. 3, 2020)

3  ("The use of the phrase "other metadata" is overly vague, and the FAC fails to identify the CMI

4  contained in "other metadata" that was allegedly removed or altered by Defendants."); or *Free*

5  *Speech Systems, LLC v. Menzel*, 390 F. Supp.3d 1162, 1175 (N.D. Cal. 2019) (dismissing DMCA

6  claim because the plaintiff failed to provide "any facts to identify which photographs had CMI

7  removed or to describe what the removed or altered CMI was"); or *Spinelli v. Nat'l Football*

8  *League*, 903 F.3d 185, 204 (2d Cir. 2018) (affirming dismissal of DMCA claim because "[t]he

9  complaint does not actually identify any instance in which CMI was removed or even make clear

10  what specific type of CMI is at issue"); *see also Philpot v. Alternet Media, Inc.*, No. 18-cv-04470-

11  YSH, 2018  WL 6267876, *5 (N.D. Cal. Nov. 30, 2018) (finding that plaintiff failed to plead "any

12  facts" showing that defendant had the required mental state).

13        Pinterest nonetheless claims that Plaintiff's DMCA claim must be dismissed because he

14  has not alleged that "Pinterest knew, as to any particular image, that that metadata actually

15  constituted CMI." Def. Mot. at 7. In so arguing, Pinterest asks this Court to make the implausible

16  inference that Pinterest—a company that touts itself as a visual search engine displaying billions

17  of images—did not know that IPTC Metadata contained CMI. This contention flies in the face of

18  the allegations that Pinterest changed its practices specifically with respect to IPTC Metadata—

19  retaining it in 2015, then removing it by 2019, then again retaining it in 2021. SAC ¶ 67. Pinterest

20  asks this Court to believe that Pinterest changed how it treats IPTC Metadata without any

21  knowledge about IPTC Metadata or its purpose to identify copyright information in photographs.

22        Pinterest also asks this Court to disregard Pinterest's changed practices regarding the

23  removal of IPTC Metadata in 2021, arguing that "Pinterest's decision to retain metadata in

24  2021 . . . would constitute a subsequent remedial measure under Federal Rule of Evidence 407."

25  Def. Mot. at 11. However, this is Pinterest improperly testifying as to **why** it changed its practices.

26  Certainly, Plaintiff nowhere alleges in the SAC that Pinterest changed its practices as a remedial

27  measure.  Plaintiff only alleges **when** Pinterest changed its practices with respect to IPTC Metadata

28

1   (*i.e.*, sometime after 2015 and sometime after January 2021) and that Pinterest was able to change

2   its handling of IPTC Metadata in 2021 in a matter of months. SAC ¶ 67, 108.

3          Although Pinterest focuses on its most recent change in 2021—claiming it was a remedial

4   measure and, in any event, not relevant to its knowledge in the past (Def. Mot. 11)—it is the highly

5   relevant fact that Pinterest retained IPTC Metadata, then removed it, then retained it, which

6   supports the reasonable inference that Pinterest was acting deliberately and with knowledge about

7   IPTC Metadata and its function. After all, IPTC Metadata is not just any metadata. IPTC Metadata

8   conforms to a specific standard established by the IPTC and universally used by professional

9   photographers, photo agencies, news agencies, libraries, and museums **to identify copyrights**.

10  SAC ¶¶ 55-57. Thus, this is not an instance where Pinterest simply deleted all metadata because

11  "[t]here are very good reasons for doing so, as metadata may contain malware and all manner of

12  private information that users are unaware of and do not intend to share." Def. Mot. 4, n. 3. Even

13  Pinterest's wholly improper factual assertion, which cannot be considered on a motion to dismiss,

14  makes no sense because Pinterest repeatedly changed its practices with respect to one specific type

15  of metadata, the very purpose of which is to manage copyright information. Likewise, Pinterest's

16  statement that in 2021 "Pinterest learned that metadata might be useful to copyright holders and

17  thus opted to retain it," Def. Mot. 2, cannot be considered and likewise makes no sense when it

18  retained IPTC Metadata in 2015. Thus, given Plaintiff's allegations that  Pinterest repeatedly

19  changed its treatment of IPTC Metadata specifically, this Court can reasonably infer that

20  Pinterest's removal of that particular metadata during a significant portion of the relevant time

21  period of this litigation was with requisite knowledge and intent that it was removing CMI when

22  it removed IPTC Metadata. *See Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005) (the court

23  "must accept all factual allegations in the complaint as true and construe the pleadings in the light

24  most favorable to the nonmoving party") (citation omitted).[2]

25  _____

26  [2] In addition, any contention that Pinterest did not know that IPTC Metadata constituted CMI, even

27  if it could be considered here on a motion to dismiss, is simply not credible.  IPTC  metadata in

28

Construed in the light most favorable to him, Plaintiff's allegations sufficiently establish the DMCA's first scienter element that Pinterest distributed copyrighted material "knowing" that the CMI in the form of IPTC Metadata "has been removed or altered without authority of the copyright owner or the law." 17 U.S.C. § 1202(b). Indeed, the only case Pinterest cites for the proposition that the first scienter element is insufficiently pleaded (Def. Mot. at 7) was not decided at the pleading stage. Instead, in *Philpot v. WOS, Inc.*, No. 1:18-CV-339-RP, 2019 WL 1767208, at *8 (W.D. Tex. Apr. 22, 2019), the plaintiff's DMCA claim survived a motion to dismiss; the parties completed discovery; and the defendant summited sworn testimony in support of its summary judgment motion that the defendant did not know that the photos contained metadata

_____

photographs constitutes CMI pursuant to Section 1202 of the DMCA even under the narrowest interpretation of the term "copyright management information." *See generally Brown v. Stroud*, No. C08-02348-JSW, 2011 WL 2600661, *5 (N.D. Cal. June 30, 2011) (recognizing that a "growing number of district courts have concluded that CMI should be construed more broadly" than to copyright notices that are digitally placed on a work). Indeed, there is no debate whether IPTC Metadata is CMI. The only question remaining in federal courts (which is not at issue here) is whether IPTC Metadata is so well-established with respect to digital images that it has become a "standard technical measure" under 17 U.S.C. 512(i), such that stripping it renders a service provider ineligible for the DMCA safe harbor altogether. *See*, *e.g.*, *Gardner v. CafePress Inc.*, No. 3:13–cv–1108–GPC–JMA, 2014 WL 794216, at *6 (S.D. Cal. Feb. 26, 2014) (finding "dispute of material fact as to whether CafePress's deletion of metadata when a photo is uploaded constitutes the failure to accommodate and/or interference with 'standard technical measures'"); *Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597, 615 (9th Cir. 2018) ("One can imagine a digital version of the old c in a circle (©) automatically triggering the uploading software to exclude material so marked by the copyright owner."); *BWP Media USA Inc. v. Polyvore, Inc.*, 922 F.3d 42, 55 (2d Cir. 2019) (Walker J., concurring) ("At issue here is whether metadata such as that used in the images in this case [*i.e.*, IPTC Metadata] has become a "*standard* technical measure.") (emphasis in original).

1   when it pulled the files off Wikimedia or when it posted the articles on its website. Here, of course,

2   Pinterest has not yet provided any testimony as to what it did or did not know with respect to its

3   handling of IPTC Metadata.

4        That the cases considering DMCA's first scienter requirement do so with respect to

5   evidence presented on a summary judgment motion or at trial attests to the inherent difficulty of

6   establishing the defendant's state of mind without evidence directly from the defendant. *See*, *e.g.*,

7   *Mango*, 970 F.3d at 172 ("The district court rejected the assertion that Hayes did not know that he

8   had removed CMI and affixed erroneous CMI without authorization. It found Hayes's shifting and

9   self-serving explanations for his use of the Photo without proper attribution not to be credible.");

10  *Gordon v. Nextel Commc'ns & Mullen Advert., Inc.*, 345 F.3d 922, 927 (6th Cir. 2003) (affirming

11  summary judgment on DMCA claim because "there is no proof that any removal [of CMI] by

12  Crossroads was intentional" and there was testimony "that no one at Crossroads intended to or did

13  remove the copyright notice from the artwork"); *Philpot v. WOS, Inc.*, 2019 WL 1767208, at *8

14  ("There is therefore nothing from which a reasonable jury could conclude that [the defendant]

15  either intentionally removed CMI from the Chesney photo or that it published the photo knowing

16  that CMI had been removed.").[3] Nonetheless, here, Plaintiff has pleaded specific factual

---

[3] Because scienter issues are appropriate for resolution by the trier of fact, many courts have

18  expressed reluctance to grant a motion to dismiss a DMCA claim based on the adequacy of

19  pleading the defendant's knowledge or intent. *See, e.g.*, *Greg Young Publ'g, Inc. v. CafePress,*

20  *Inc.*, No. 15-CV-6013, 2016 WL 6106752, at *3-4 (C.D. Cal. Jan. 25, 2016) ("Virtually all of cited

21  decisions involved motions for summary judgment—a fact only supporting the impropriety of

22  dismissal at this stage."; denying motion to dismiss Section 1202(b) claim based on argument that

23  the complaint "does not support an inference of intent or knowledge on Defendant's part"); *Daar*

24  *v. Oakley, Inc.*, No. CV 18-6007 PA (KSX), 2018 WL 9596129, at *3 (C.D. Cal. Sept. 27, 2018);

25  *Robbins v. Oakley, Inc.*, No. CV 18-5116 PA (KSX), 2018 WL 5861416, at *3 (C.D. Cal. Sept.

26  27, 2018); *Michael Grecco Products., Inc. v. Alamy, Inc.*, 372 F. Supp. 3d 131, 139 (E.D.N.Y.

---

allegations that support an inference that Pinterest's decision to cease retaining IPTC Metadata from at least 2019 to 2021 was an intentional removal of CMI. *See Monotype Imaging, Inc. v. Bitstream, Inc.*, No. 03 C 4349, 2005 WL 936882, at *8 (N.D. Ill. Apr. 21, 2005) (denying summary judgment to the defendant on a Section 1202(b) claim based on evidence that the defendant chose not to include information containing CMI even though it was capable of including it).

### B. Plaintiff Sufficiently Alleges that Pinterest Knew or Had Reason to Know that Its Removal of IPTC Metadata Will Conceal Its Own Infringement

Plaintiff added numerous new factual allegations to address this Court's conclusion that Plaintiff did not sufficiently plead the second scienter element of the DMCA. *See* SAC ¶¶ 92-108. With respect to the prior complaint, this Court concluded that Plaintiff did "not allege any facts to show that Pinterest's alleged distribution of photographs induced, enabled, facilitated or concealed any particular act of infringement by anyone, let alone a pattern of such infringement likely to recur in the future." Order at 11-12. The SAC now provides detailed factual allegations regarding Pinterest's efforts to conceal its direct infringement of the copyrights of a putative class member, Mr. Davis, by its practice of systematically deleting IPTC Metadata from all images uploaded by its users.

Pinterest employs consistent and uniform technology with respect to all images uploaded, stored, and displayed on its websites and app. SAC ¶ 93. Much of the information that is embedded into the images that Pinterest displays on its website and app are derived from the data already found in the images originally uploaded by users. *Id.* at ¶ 94. From at least 2019 until 2021, Pinterest did not code its displayed images with any IPTC Metadata embedded in the images originally uploaded by users, even though Pinterest did code onto the displayed images other data found on the images originally uploaded by users. *Id.* Again, Pinterest previously retained IPTC

2019); *Penske Media Corp. v. Shutterstock, Inc.*, -- F.Supp.3d --, 1:20-cv-04583 (MKV), 2021 WL 2894809, *8 (S.D.N.Y. Aug. 9, 2021).

1  Metadata in 2015, so it changed its practices with respect to IPTC Metadata at some point between
2  2015 and 2019. *Id.* at ¶ 67.

3        Pinterest claimed in the *Davis* action that it would be unduly burdensome for it to identify
4  Mr. Davis' works displayed by Pinterest by any of the information such as his name and the name
5  of the work, which he includes in the IPTC Metadata that he embeds into his photographs and
6  which he provided to Pinterest in his complaint. SAC ¶ 97.

7        Pinterest initially claimed that the only manner in which it could identify Mr. Davis' works
8  displayed on its website and app would be for Mr. Davis to provide specific URL addresses where
9  his works appear on Pinterest. *Id.* at ¶ 98. Specifically, Mr. Davis posed the following
10 interrogatory:

11       Identify every instance in which Works have been Pinned, uploaded,
      downloaded, displayed or otherwise used on or through the Pinterest Platform.
12       If you cannot identify every instance, explain why.

13 *Id.* at ¶ 99. In response, Pinterest stated in relevant part:

14       Plaintiff has not provided uniform resource locators (URLs) or Pin IDs[4] for
      alleged infringements on Pinterest of the 51 images that he claims are at issue
15       in the SAC. Without such information, Pinterest does not know whether the
      images that Plaintiff claims to own and claims are at issue can be found among
16       the billions of images that users have posted on the Pinterest service.

17

18 *Id.* at ¶ 100. After Mr. Davis objected to this response and engaged in motion practice to compel
19 Pinterest to provide a more fulsome response, Plaintiff then amended its response in part as
20 follows:

21       There are billions of images accessible on the Pinterest service. While the
      service offers a public-facing keyword search capability, that search capability
22       does not use image-matching technology. Conducting manual keyword
      searches of the corpus of images on the service using search terms that
23       Defendant would have to devise in the hopes of finding images that match the
      works that Plaintiff has put at issue in this case would not only be an enormously
24       time consuming process, but would generate highly over- and potentially under-
      inclusive results. ***That is especially so since the persons charged with***
25       ***performing these searches would have to review many thousands of results***

26 _____

[4] Pin IDs is a numerical value that Pinterest assigns to a Pin and is found at the end of the URL of
27 a Pin. SAC ¶ 101.

28

> *for each search and would not know by looking at a given image in the results*
> *whether it was in fact one of the specific works that Plaintiff has put at issue…*

*Id.* at ¶ 102 (emphasis added).

This is Defendant's *modus operandi* to induce, enable, facilitate, and/or conceal infringement. Pinterest was aware or had reasonable grounds to be aware that the effect of removing IPTC Metadata would be to hinder the efforts of copyright holders to effectively enforce their copyrights against Pinterest. Pinterest was aware or had reasonable grounds to be aware that proving copyright infringement and authenticating evidence of infringement is far more difficult without documentation of infringement produced from its own records. *Id.* at ¶ 104.

The very purpose of the IPTC Metadata that Plaintiff and other professional photographers embed into their images is to easily and conclusively identify their copyrighted works and enforce their copyrights. SAC ¶¶ 55-65. Plaintiff uses the IPTC Metadata that he embeds in all of his copyrighted works "as the easiest way to verify that an image posted online is, in fact, his because "mere visual review" is not always sufficient to identify his works. *Id.* at ¶ 62. The only reason Pinterest could claim in copyright litigation that it "does not know whether the images that Plaintiff claims to own and claims are at issue can be found among the billions of images that users have posted on the Pinterest service" is because Pinterest itself removed the IPTC Metadata. And the only reason Pinterest can now claim that textual searches would require someone to "review many thousands of results for each search [by someone who] would not know by looking at a given image in the results whether it was in fact one of the specific works that Plaintiff has put at issue" is because Pinterest deliberately chose to omit in coding the very information that would obviate this common objection to producing discovery regarding its direct infringement. *Id.* at ¶ 104.

Pinterest has provided no plausible explanation of why it did not include IPTC Metadata onto its displayed images from at least 2019 to 2021. This is true even though Pinterest (1) preserved IPTC Metadata in 2015 when its website was tested by a third party; (2) the IPTC organization had urged website operators to retain IPTC Metadata; and (3) other online companies, in fact, did so. *Id.* at ¶ 106. In citing *Stevens* for the proposition that social media services commonly remove metadata from images, Pinterest simply ignores Plaintiff's allegation that,

1    unlike many social media services in 2015, Pinterest previously preserved embedded IPTC

2    metadata when a user uploaded an image, according to third party testing of Pinterest's website.

3    *Compare Stevens*, 899 F.3d at 672, n. 1 ("Tests concluded by the Embedded Metadata Group in

4    2015 revealed that, of the fifteen social media websites studied, eight preserved EXIF metadata

5    and seven, including, Facebook, Instagram, and Twitter, did not.") *with* SAC ¶ 67 ("Based on

6    publicly available documents related to tests conducted by IPTC regarding embedded metadata,

7    Pinterest previously preserved embedded IPTC metadata when a user uploaded an image at least

8    in late 2015 at the time of IPTC's testing.").

9            Given these new factual allegations in the SAC, this Court can make the eminently

10   plausible inference that sometime between 2015 and 2019, Pinterest deliberately stopped including

11   IPTC Metadata in its displayed images to claim ignorance of its infringement of copyrighted

12   images, to avoid having to take down all displayed images created from a copyrighted image, and

13   to thwart the enforcement of copyrights. SAC ¶ 106. Had Pinterest retained IPTC Metadata, it

14   would not need specific URLS or Pin IDs to execute takedown notices or respond to discovery

15   requests. It would not need complex image-matching technology (which may nonetheless

16   misidentify images) to locate copyrighted works on its websites and app. Copyright holders in

17   photographic works could identify their work by their name or other CMI that they embed as a

18   matter of course into IPTC Metadata. Pinterest could then use simple textual searches of IPTC

19   Metadata to identify all displayed images that contain such CMI, whether to remove any infringing

20   uses of such displayed images or to produce in discovery evidence of all uses of the displayed

21   images. *Id.* at ¶ 107. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) ("A claim has facial

22   plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

23   inference that the defendant is liable for the misconduct alleged.").

24           Without addressing the substance of **<u>any</u>** of the new factual allegations in SAC ¶¶ 92-107,

25   Pinterest argues that "Mr. Harrington has not even alleged that Pinterest's removal of metadata

26   has led to an instance of infringement of his work, and anyone's [sic] intent on misusing Mr.

27   Harrington's images could hide their conduct from him by removing metadata themselves." Def.

28   Mot. at 9, n. 6. Here, Plaintiff provided factual allegations identifying specific instances of

Pinterest's infringement of his and other photographer's works, including Mr. Davis, SAC ¶¶ 27-48, 75-91, and identified how Pinterest hid its infringement of Mr. Davis' works by removing IPTC Metadata. *Id.* at ¶¶ 92-107. These detailed allegations do not go to some "universal possibility of encouraging infringement." *Stevens*, 899 F.3d at 674. Rather, they make "an affirmative showing," *id.*, that Pinterest knew or had reason to know its removal of IPTC Metadata from Plaintiff's copyrighted works and the works of other professional photographers "will induce, enable, facilitate, or conceal" **Pinterest's** own infringement. 17 U.S.C. § 1202(b).

### C. Pinterest Cannot Refute the Inference of Unlawful Scienter

Pinterest claims that "it makes no sense to infer that Pinterest had the requisite culpable mental state with respect to invisible metadata containing CMI when, by Mr. Harrington's own admission in the SAC, Pinterest not only displays visible CMI in full-sized images on its service but also links back to the original source of those images elsewhere on the Internet." Def. Mot. at 12. This argument puts on full display Pinterest's efforts to mischaracterize Plaintiff's allegations and Pinterest's website. First, Plaintiff does not "admit" that Pinterest properly displays visible CMI in all of its full-sized images on its service. It is the **user** that chooses the link back and the visible title and description of the user's pins, not Pinterest. *See* https://help.pinterest.com/en/article/add-pins-from-the-web ("enter the website URL where the image you want to Pin is . . . Add a title and description"). Plaintiff alleges that "Pinterest often displayed images of Plaintiff's Works that are static and do not link back to any live website, let alone Plaintiff's website." SAC ¶ 50. Even in those instances where the **user** chose to properly attribute Plaintiff's photographs in the user's designation of title or description, **Pinterest** removed the CMI. Plaintiff alleges that Pinterest "did not provide attribution or display Plaintiff's CMI" and "deliberately stripped the images of their identifying source and/or copyright management information" when **Pinterest** displayed Plaintiff's Works in the context of advertisement. *Id.* ¶¶ 51-52. *See also id.* at ¶ 77 (displaying Pinterest's display of Mr. Davis' work "with no attribution and stripped of his CMI, to promote the wares of PetSmart, Minted (a stationary and paper goods retailer) and Wayfair (a furniture and home decoration retailer)"); *id.* at ¶¶ 81-91 (showing other professional photographers' images stripped of their identifying source and CMI by Pinterest).

1    Plaintiff further alleges: "By removing any visible CMI and identifiable sources from the "pinned"

2    images, Pinterest ensured that users would focus more on the paid advertisement. The paid

3    advertisement contains identifying tags and live links, which made the paid advertisement stand

4    out among Pinterest's use of stripped, often static "pinned" images." *Id.* at ¶ 53.

5         Although users may choose to identify the website URL where the user found the image,

6    Pinterest itself does **not** link back to the original source of images. Pinterest is a closed-universe

7    website that displays only its own derivative works created from the content uploaded by its users,

8    which are either "Organic Pins" (*i.e.*, displayed images derived from content that its users pinned)

9    and "Promoted Pins" (*i.e.*, displayed images derived from content that advertisers pay Pinterest to

10   promote). SAC ¶ 94. **All** of the images displayed by Pinterest on its website and app are embedded

11   with data that Pinterest's artificial intelligence uses to track how a user interacts with content on

12   Pinterest's website and app. *Id.* Users have no control over how the Organic Pins and Promoted

13   Pins are organized and displayed to them, and users cannot opt out of advertisement in those

14   website pages where **Pinterest** chooses to display images without CMI. *Id.* at ¶ 94. Thus, it is not

15   on online search engine like Google (which does retain IPTC Metadata) or like the one at issue in

16   *Kelly v. Arriba Soft Corp.*, 77 F.Supp.2d 1116, 1122 (C.D. Cal. 1999), *aff'd and rev'd in part*, 336

17   F.3d 811 (9th Cir. 2003) (explaining that displaying thumbnails of the plaintiff's images without

18   CMI did not violate the DMCA because the defendant did not remove CMI from the plaintiff's

19   original, full-sized images that linked back to the original source).

20        Rather, it is more akin to Zillow's search engine, Digs, that was at issue in *VHT, Inc. v.

21   Zillow Grp., Inc.*, 918 F.3d 723 (9th Cir. 2019). In *VHT*, the Ninth Circuit examined the search

22   engine at issue, which had many of the same commercial functions as Pinterest's website, and

23   concluded that the defendant did not have a defense for its copyright infringement:

24             Unlike the internet-wide search engines considered in *Amazon* and *Kelly*, Digs is a
               closed-universe search engine that does not "crawl" the web. Users can run searches
25             on the "searchable set" of images within Digs' walled garden, which includes VHT
               photos. The search results do not direct users to the original sources of the photos,
26             such as VHT's website. Rather, they link to other pages within Zillow's website
               and, in some cases, to third-party merchants that sell items similar to those featured
27             in the photo.

28

1   *Id.* at 742.

2       Just like Zillow's Digs, Pinterest offers a closed-universe website. Pinterest does not link

3   its display of images  to the original sources of the photos, such as Plaintiff's website. Rather they

4   link to other pages within Pinterest's website and to third-party merchants that sell items similar

5   to those featured in the photo. Pinterest cannot magically shield itself from liability for the harm it

6   causes by saying the word "thumbnail."

7       Finally, Plaintiff has alleged exactly why "it makes [] sense to infer that Pinterest had the

8   requisite culpable mental state with respect to invisible metadata containing CMI." Def. Mot. at

9   12. Pinterest's deletion of IPTC Metadata allowed Pinterest to refuse to produce evidence of its

10  infringement in the *Davis* matter and claim that it "does not know whether the images that Plaintiff

11  claims to own and claims are at issue can be found among the billions of images that users have

12  posted on the Pinterest service"; that "[c]onducting manual keyword searches of the corpus of

13  images on the service using search terms that Defendant would have to devise in the hopes of

14  finding images that match the works that Plaintiff has put at issue in this case would not only be

15  an enormously time consuming process, but would generate highly over- and potentially under-

16  inclusive results"; and that such textual searches would require someone to "review many

17  thousands of results for each search [by someone who] would not know by looking at a given

18  image in the results whether it was in fact one of the specific works that Plaintiff has put at issue."

19  SAC ¶¶ 100, 102. Pinterest deliberately chose to omit in coding of its displayed images the very

20  information that would obviate this excuse for not producing evidence of infringement. *Id.* at ¶

21  104. Pinterest was aware or had reasonable grounds to be aware that proving copyright infringement

22  and authenticating evidence of infringement is far more difficult without documentation of

23  infringement produced from its own records. *Id.* at ¶ 103. Thus, Pinterest was aware or had reasonable

24  grounds to be aware that the effect of removing IPTC Metadata would be to hinder the efforts of

25  putative class members like Mr. Davis to effectively enforce their copyrights against Pinterest. *Id.*

26      In sum, Plaintiff has provided new factual allegations to support the inference that (1)

27  Pinterest knew it was removing CMI when it intentionally removed IPTC Metadata, and (2) it

28  knew or had reason to know that removing IPTC Metadata will facilitate or conceal its own

copyright infringement. Plaintiff, therefore, has pleaded sufficient facts, which accepted as true, state a plausible Section 1202(b) claim.

## CONCLUSION

Defendant's motion to dismiss Count II of the SAC should be denied.

Respectfully submitted,

Date: December 20, 2021

**REESE LLP**

By: __/s/ Sue J. Nam__
Sue J. Nam (State Bar No. 206729)
Michael R. Reese (State Bar No. 206773)
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
Email: *snam@reesellp.com*
      *mreese@reesellp.com*

*Counsel for Plaintiff and the Proposed Class*