DAVID H. KRAMER, SBN 168452
Email: dkramer@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300

*Counsel for Defendant*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MAUREEN HARRINGTON, as the representative of the Estate of Blaine Harrington III, and HAROLD DAVIS, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PINTEREST, INC.,<br><br>Defendant. | CASE NO.: 5:20-cv-05290-EJD<br><br>**DEFENDANT PINTEREST, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Date: August 29, 2024<br>Time: 9:00 A.M.<br>Judge: Honorable Edward J. Davila<br>Location: San Jose, Courtroom 4<br><br>Complaint Filed: March 4, 2024 |

**INTRODUCTION**

As Pinterest explained in its Motion (ECF No. 92), two grounds require dismissal of the Third Amended Complaint (TAC). First, claim preclusion bars Mr. Davis from relitigating precisely the same claim of copyright infringement that he put squarely at issue in his prior action. *See* Mot. 7-11. Second, the Digital Millennium Copyright Act (DMCA) shields Pinterest from the TAC's narrow theory of infringement based on the alleged appearance of images in notification messages that Pinterest sends its users. *See* Mot. 11-16. The Opposition does not grapple with the law or Pinterest's arguments on either of these grounds.

On the first, the law is clear that claim preclusion—in contrast to issue preclusion—reaches beyond claims that a party ***actually litigated*** to a final judgment in a prior action to cover those that ***could have been litigated***. *See, e.g.*, *United States ex rel. Barajas v. Northrop Corp.*, 147 F.3d 905, 909 (9th Cir. 1998); *see also* Mot. 7-11. That is, claim preclusion asks "whether the claim could have been brought in the first action." *Turtle Island Restoration Network v. United States Dep't of State*, 673 F.3d 914, 918 (9th Cir. 2012). That is not a close call here. Mr. Davis spent years litigating his own copyright infringement action against Pinterest, *Davis v. Pinterest, Inc.*, No. 4:19-cv-07650-HSG (N.D. Cal.) ("*Davis*"), and asserted in his operative complaint there the same alleged infringement (a June 5, 2020 notification message from Pinterest) of the same copyrighted photo (Mr. Davis' "Flower of Spring's Desire") that he reasserts in the TAC. Mot. 1-2, 8-9. The fact that Mr. Davis actually claimed infringement of "Flower of Spring's Desire" via notifications in *Davis* conclusively shows that he not only could have litigated the claim, but that he actually did so. The Opposition does not even try to argue otherwise.

Instead, the Opposition opts for misdirection by leading with an argument that another element of claim preclusion—the final-judgment element—is wanting because Judge Gilliam's ruling rejecting Mr. Davis' notification-based infringement theory was *dicta*. As a matter of law, however, a summary-judgment order—like the one Judge Gilliam entered and the Ninth Circuit affirmed with respect to Mr. Davis' claim of direct copyright infringement in *Davis*—constitutes a final judgment on the merits of the prior case thereby triggering claim preclusion. *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005). That is all that is needed for this element.

To the extent the Opposition suggests that the final judgment must address each specific aspect or theory of the previously decided claim on the merits, it cites no authority for that suggestion. Such a rule would eviscerate the distinction between claim and issue preclusion, by restricting claim preclusion—like issue preclusion—to only those issues that "'were actually litigated and necessarily decided' in a prior proceeding." *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988). That is not the law. Mr. Davis' claim is barred.

The Opposition is even more evasive on the second ground for dismissal, that the DMCA safe harbors fully dispose of the TAC. Plaintiffs' sole argument is that affirmative defenses like the DMCA are not typically decided on the pleadings. Opp'n 2-5. But none of Plaintiffs' cases involved anything like the unique posture here, where the parties repeatedly stayed this tagalong action while the first-filed action—litigated by the same counsel and, now, joined by the same Plaintiff, Mr. Davis—proceeded through judgment and appeal, ultimately confirming that Pinterest satisfies all of the DMCA's requirements. While the Opposition (at 4) lists off those requirements and claims that they raise "intensely factual" questions, it does not identify a single fact that needs relitigating. Nor is there any dispute regarding how notifications work; the TAC correctly alleges that they "incorporate hyperlinks to 'pinned' images that link back to Pinterest's own website." TAC ¶ 24.

At this stage, the only point of disagreement is not factual, but legal: Are links to images that appear in Pinterest's notifications to its users within the § 512(c) or § 512(d) safe harbors? *See* TAC ¶¶ 35-36. They are. As explained in Pinterest's Motion (at 11-16), notifications come within the heartland of § 512(c) because they facilitate user access to user-uploaded materials and of § 512(d) because the links merely point users to user-uploaded materials. Those undisputed and indisputable matters are dispositive, yet the Opposition has nothing at all to say about the DMCA on the merits.

Where, as here, no factual dispute exists regarding an affirmative defense, the Court may rule on the defense on the pleadings. *See Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185, 1194 n.6 (9th Cir. 2018) (permitting consideration of "affirmative defenses" on a motion to dismiss when "the defense raises no disputed issues of fact," concerns "arguments [that] are purely legal," and

"[n]o discovery is necessary"); *see also Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (*per curiam*) (same). Indeed, Plaintiffs' counsel ***explicitly invited*** Pinterest to move to dismiss by suggesting that "the parties cut to the chase and obtain a ruling on whether the DMCA shields Pinterest's notifications, ***either on Pinterest's motion to dismiss or on summary judgment, without further discovery***." Declaration of Thomas R. Wakefield in Support of Pinterest's Request for Judicial Notice ("Wakefield Decl.") Ex. A at 5 (emphasis added). Now that Pinterest has taken them up on that suggestion, Plaintiffs rest their entire argument on the supposed impropriety of Pinterest moving to dismiss on what is a pure question of law. The Court should reject Plaintiffs' feigned indignation and proceed to resolve this remaining issue as Plaintiffs expressly understood it would. And on the merits of the DMCA, Plaintiffs simply have no answer at all. The safe harbors bar all the alleged infringements in the TAC. Pinterest's Motion should be granted.

## ARGUMENT

### I. The Opposition Ignores the Dispositive Distinction between Claim and Issue Preclusion

In its Motion (at 7-11), Pinterest explained that the doctrine of claim preclusion (which bars claims that ***could have been*** litigated in a prior action)—rather than issue preclusion (which bars only those that were ***actually*** litigated and resolved)—forecloses Mr. Davis' infringement claim in this second case. *E.g.*, *Northrop*, 147 F.3d at 909. The Opposition ignores the dispositive distinction between issue and claim preclusion. Instead, it argues that two of claim preclusion's three elements are lacking, claiming there was (1) no final judgment on the merits in *Davis*; and (2) no identity of claims between Mr. Davis's prior and present claims.[1] Opp'n at 1-2. Both arguments are frivolous.

***First***, the Opposition argues that there was no final judgment on the merits in *Davis*, citing this Court's prior order granting leave to amend. Opp'n at 1-2. But of course there was. Plaintiffs'

---

[1] The Opposition concedes the third element, i.e., that the two actions involve the same parties. *See* Mot. 8.

own authority leaves no doubt on this point: a summary-judgment order constitutes "a decision on the merits for res judicata [i.e., claim preclusion] purposes." *Mpoyo*, 430 F.3d at 987. Judge Gilliam entered summary judgment for Pinterest on Mr. Davis' claim of direct copyright infringement in *Davis* and the Ninth Circuit affirmed that Order. *See* Mot. 8-9. That is all it takes to satisfy claim preclusion's final-judgment element. Were it otherwise, claim preclusion would only extend to each specific aspect of the claim that was actually litigated to final judgment, thus collapsing the "distinct" doctrines of claim and issue preclusion. *E.g.*, *Robi*, 838 F.2d at 321. That would directly contravene Ninth Circuit law holding that, for claim preclusion, "[i]t is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather, the relevant inquiry is whether they could have been brought." *Northrop*, 147 F.3d at 909.

***Second***, the Opposition argues that there is no identity of claims between *Davis* and this action—but again ignores binding law. "[I]dentity of claims exists when two suits arise from 'the same transactional nucleus of facts.'" *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1078 (9th Cir. 2003). As Pinterest explained in its Motion (at 8), this inquiry is "essentially the same as whether the claim could have been brought in the first action." *Turtle Island*, 673 F.3d at 917-18. In this way, too, the common-nucleus element gets at the basic distinction between issue and claim preclusion; again, issue preclusion bars relitigation of issues that were actually litigated in a prior action, whereas claim preclusion bars relitigation of all claims that could have been brought. *Northrop*, 147 F.3d at 909.

Tellingly, Plaintiffs offer no argument that Mr. Davis could not have brought his notifications-based infringement claim in his prior action. Indeed, the TAC reasserts precisely the same alleged infringement of the same work that Mr. Davis asserted in his operative complaint in *Davis*. *See* Mot. 1-2, 8-9; *see also* ECF No. 87 at 5 (this Court acknowledging that "Davis attempted to allege the same notification-based infringement theory in the Davis Action"). It is hard to imagine a more clear-cut application of claim preclusion—Mr. Davis could have brought this infringement claim in *Davis*, as evidenced by the fact that he actually did so. It matters not at all that Mr. Davis' own strategic decisions in *Davis*, in particular his failure to identify the specific

claim based on notifications by the deadline Judge Gilliam set, may have prevented him from pursuing his notifications theory to judgment on the merits. "It is a misconception of *res judicata* to assume that the doctrine does not come into operation if a court has not passed on the 'merits' in the sense of the ultimate substantive issues of a litigation." *Angel v. Bullington*, 330 U.S. 183, 190 (1947); *see also* Mot. 10-11. Mr. Davis' litigation strategy—and the fact that Judge Gilliam barred the specific claim he asserted and now wants to assert anew here—do not entitle him to evade claim preclusion.

Rather than grapple with blackletter law, the Opposition offers up a hypothetical. It claims that, if accepted, Pinterest's argument "would bar Mr. Davis from claiming infringement for the hundreds of works that Mr. Davis federally registered beyond the 51 works in his prior case and for the potentially hundreds of thousands of times his works may have been infringed ***outside*** of Pinterest's platform as opposed to ***within*** its platform." Opp'n at 2 (emphasis in original). But the TAC does not assert hundreds of additional copyrighted works belonging to Mr. Davis. It asserts a single work, "Flowers of Spring's Desire," which was one of the 51 works at issue in *Davis*. *Compare Davis*, ECF No. 56, Second Amended Complaint ¶ 38, Image 6 (image of email notification dated June 5, 2020 allegedly including Mr. Davis' work "Flowers of Spring's Desire"), *with* TAC ¶ 32, Image 2 (exact same image).

Despite his suggestion to the contrary, Mr. Davis cannot litigate works that are nowhere mentioned in the TAC. To allow him to do so would violate a basic precept of copyright law, which limits a plaintiff's case to the copyrighted works asserted in the operative complaint. *See Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 673 (9th Cir. 2017) (a copyright "action is a specific lawsuit by a specific plaintiff against a specific defendant about specific copyrighted images; it is not a lawsuit against copyright infringement in general"); *accord Stebbins v. Polano*, 2022 WL 1601417, at *3 (N.D. Cal. Mar. 8, 2022) ("An infringement claim requires a plaintiff to specifically allege the works that are the subject of the claim."). It follows that this case is about the only work asserted in the TAC: "Flowers of Spring's Desire." And as to that work, Mr. Davis has already forfeited his chance to litigate any potential alleged infringement via Pinterest's

display of user-uploaded images in the notification messages, due to his own strategic decisions and/or discovery failures in *Davis*.[2] Mot. 9-11.

Plaintiffs' last point on the common-nucleus element is a makeweight attempt to distinguish *Bell v. Taylor*, 827 F.3d 699 (7th Cir. 2016). As Plaintiffs see things, the "obvious distinction" is that "*Bell* ***denied*** the plaintiff's request to amend his complaint and dismissed his later lawsuit based on *res judicata*," whereas this "Court ***granted*** leave to amend and rejected Pinterest's argument that Mr. Davis's copyright claims are barred." Opp'n at 2 (emphasis in original). That is not an argument so much as an observation that *Bell* and this Court reached divergent conclusions, but they were not addressed to the same issue.

In its prior Order, the Court found that ***issue*** preclusion does not bar Mr. Davis' notifications-based claim in this case—but it did not address the separate doctrine of ***claim*** preclusion. In analyzing claim preclusion, this Court should arrive at the same conclusion as *Bell*, which is both highly persuasive and directly on point. In *Bell*, a photographer initiated a second action about a photo that he tried, but failed, to belatedly put at issue in his first action. 827 F.3d at 706-07. *Bell* reasoned that the photographer "had an opportunity to litigate infringement of [the photo]" in the first action and held that claim preclusion barred him from "tak[ing] another bite at the apple" in the second action.[3] *Id.* at 706-07. The Opposition identifies no flaw in *Bell's* logic

---

[2] Even if the TAC did identify additional copyrighted works (it does not), infringement claims based upon them (and based on the same conduct by Pinterest) would be barred if those claims could have been brought in the first action. *Malberg v. McCracken*, 2023 WL 6278879, at *2 (N.D. Cal. Sept. 25, 2023) (Davila, J.) ("[A] plaintiff is not at liberty to split up his demand, and prosecute it by piecemeal, or present only a portion of the grounds upon which special relief is sought, and leave the rest to be presented in a second suit, if the first fail." (cleaned up)).

[3] In straining to distinguish *Bell*, the Opposition misstates the case's procedural history. There, the court in the first case denied leave to amend to belatedly assert the image, 827 F.3d at 705-06, just as Judge Gilliam refused to allow Mr. Davis to belatedly supplement his list of infringements in *Davis*, *see* Mot. 5. Pinterest's argument is that ***this Court***—like the district court

(continued...)

and gives no reason why the Court should arrive at the opposite conclusion here. *Bell* was entirely correct, as a contrary holding would permit a plaintiff who makes strategic errors in the first case to bring a second case to correct them, thus defeating claim preclusion's core rationale of conclusively resolving disputes. *See, e.g.*, *Tahoe-Sierra*, 322 F.3d at 1077.

For these reasons and those set out in Pinterest's Motion (at 7-11), claim preclusion bars Mr. Davis' claim. He must be dismissed from this action.

## II. The TAC Presents a Pure Question of Law regarding the DMCA Safe Harbor, Yet the Opposition Presents No Substantive Argument on the DMCA

Pinterest's Motion explained that its notification messages fall within the § 512(c) safe harbor because they facilitate user access to user-uploaded images on Pinterest servers, and that the § 512(d) safe harbor provides an alternative and additional shield from liability because notifications merely refer or link users to the existing user-uploaded images. Mot. 11-16.

The Opposition offers no argument whatsoever regarding Pinterest's entitlement to the DMCA safe harbors. Plaintiffs' only response is that DMCA immunity, as an affirmative defense, is not ordinarily resolved on a motion to dismiss. Opp'n at 4. But this is no ordinary case, as demonstrated by the intertwined procedural histories of this case and *Davis*. Indeed, when this matter resumed after several stays, it was ***Plaintiffs' counsel*** who proposed that "the parties cut to the chase and obtain a ruling on whether the DMCA shields Pinterest's notifications, . . . on Pinterest's motion to dismiss . . . without further discovery." Wakefield Decl. Ex. A at 5. Remarkably, Plaintiffs now seek to sanction Pinterest for taking Plaintiffs up on their own proposal, claiming that Pinterest is needlessly multiplying proceedings. Opp'n at 4-5. That is galling: as the history of this case and *Davis* demonstrates, it is ***Plaintiffs*** who are multiplying proceedings by resisting the motion to dismiss that they expressly invited, and pretending that issues that have already been resolved remain open. The Court should put an end to Plaintiffs' machinations.

---

in the second case initiated by the *Bell* plaintiff—should find that Mr. Davis' claim ***in this case*** is barred by claim preclusion.

As pleaded, the TAC presents a pure question of law regarding the applicability of the DMCA to Pinterest notifications—and (accepting for present purposes that it was not decided in *Davis*) it is the only remaining matter in dispute between the parties. TAC ¶¶ 35-36. The Court can, and should, resolve the issue now. *See, e.g.*, *Lusnak*, 883 F.3d at 1194 n.6 (affirmative defenses that "raise[] no disputed issues of fact" and concern "purely legal" arguments can be resolved on a motion to dismiss); *In re iPhone 4S Consumer Litig.*, 2013 WL 3829653, at *15 (N.D. Cal. July 23, 2013) (same); *see also Nunes v. Arata, Swingle, Van Egmond & Goodwin (PLC)*, 983 F.3d 1108, 1112 (9th Cir. 2020) (reversing district court denial of motion to dismiss based on an affirmative defense when the underlying issue is purely legal).

The procedural history reinforces this conclusion. Throughout the litigation, the parties understood that the holding of *Davis* on the DMCA would apply with equal force to this case. They acted accordingly, by staying this case not once, but twice. While the parties awaited Judge Gilliam's Order on the parties' cross-motions for summary judgment on the DMCA in *Davis*, they agreed that staying this action would "limit unnecessary discovery expense, avoid unnecessary motion practice, and avoid unduly burdening the Court." ECF No. 65 at 2; *see also* ECF No. 65-1 (counsel representing to the court that the cases are "highly similar"). And after Judge Gilliam resolved the cross-motions in Pinterest's favor, the parties again agreed that, because the cases involve "similar" claims and have "significant overlap," ECF No. 70, the stay should continue to "conserve Court and Party resources" pending Mr. Davis' appeal of Judge Gilliam's Order to the Ninth Circuit. ECF No. 70-1. Central to Pinterest's agreement to both stays was its understanding that the DMCA would not need to be litigated anew here. Had it been otherwise, Pinterest would have had no incentive to agree to the stays, since they would not have saved time or expense and could prejudice Pinterest due to witness unavailability, faded memory, and so on. Indeed, key witnesses have become unavailable since the stay—for example, the Plaintiff, Mr. Harrington, passed away in January 2023. *See* ECF No. 74.

Plaintiffs' representations confirm that they shared Pinterest's understanding. Most tellingly, after the Ninth Circuit affirmed Judge Gilliam's Order and this case finally resumed, Plaintiffs' counsel took the position that the only remaining issue here is "whether the DMCA

shields Pinterest's notifications," not each and every element of the DMCA as Plaintiffs now pretend. Wakefield Decl. Ex. A at 5. That reflected both parties' long-held belief that, while Plaintiffs and Pinterest disagree on whether Judge Gilliam's DMCA ruling in *Davis* covers notifications, the DMCA's application is a purely legal question that can be resolved "on Pinterest's motion to dismiss . . . without further discovery." *Id.* The parties thus submitted a joint status report, explaining that, in anticipation of Plaintiffs' proposed further amendment to add unidentified additional plaintiffs, they anticipated "reusing discovery from the *Davis* action" and limiting further discovery to any new issues raised in the yet-to-be-sent proposed TAC "that are ***distinct to this action***." ECF No. 78 (emphasis added). In other words, that which was addressed in the *Davis* case, like Pinterest's general entitlement to the DMCA safe harbor, would not be relitigated.

The as-filed TAC contained virtually no new issues, let alone ***factual*** issues. It lifts allegations about Mr. Davis directly from his complaint in the *Davis* action, *see supra* 1, 5; Mot. 3-11, and it identifies only one alleged infringement of Harrington's work—the exact same one that was included in his original complaint there, *compare* TAC ¶ 31, Image 1, *with* ECF No. 1 ¶ 47, Image 7. The TAC explicitly tees up the pure legal issues that are the subject of Pinterest's Motion, alleging that "Pinterest's infringement of Plaintiffs' respective copyrights with respect to Notifications" is neither "by reason of the storage at the direction of a user under Section 512(c)" nor "by reason of Pinterest referring or linking users to an online location outside its own website by using information location tools, under Section 512(d)." TAC ¶¶ 35-36. Pinterest thus moved to dismiss the TAC based upon the DMCA as a matter of law, explaining in its Motion that notifications are squarely within the scope of both the § 512(c) and the § 512(d) safe harbors. Mot. 11-16.

Instead of substantively responding to Pinterest's Motion, the Opposition raises the mere possibility of hypothetical "factual" issues. Plaintiffs quote *verbatim* a judicial opinion listing the DMCA's threshold requirements, yet do not even try to explain ***how*** any factual issues are present in ***this case***. *Compare* Opp'n 2-3, *with BMG Rts. Mgmt. (US) LLC v. Joyy Inc.*, 2024 WL 1098786, at *5 (C.D. Cal. Feb. 12, 2024). That is because, no factual issues remain as to whether

Pinterest satisfies all of the DMCA's requirements. Judge Gilliam's opinion in *Davis*, and the Ninth Circuit's affirmance, resolved all other elements of the DMCA safe harbors in Pinterest's favor. *Davis v. Pinterest, Inc.*, 601 F. Supp. 3d 514, 536 (N.D. Cal. 2022).[4] And neither the TAC nor the Opposition suggest any issues distinct to this action. That leaves only the legal issues, present on the face of the TAC, of whether Pinterest's display of Plaintiffs' images in notifications arose "by reason of the storage" by users of material on Pinterest, 17 U.S.C. § 512(c)(1); *see also* TAC ¶ 35, or "by reason of [Pinterest] referring or linking users" to such material, 17 U.S.C. § 512(d)(1); *see also* TAC ¶ 36. Further discovery would do nothing to clarify those issues.[5]

## CONCLUSION

Pinterest respectfully requests that the Court dismiss Plaintiffs' Third Amended Class Action Complaint with prejudice.

---

[4] Indeed, as to every element of the DMCA defense, save control-plus-financial-benefit requirement (17 U.S.C. § 512(c)(1)(B)), the very same counsel now representing the Plaintiffs in this case never even raised any dispute after Pinterest moved for summary judgment on them in *Davis*. *See Davis*, ECF No. 152 at 10-15, 18-23; *see also Davis*, 601 F. Supp. 3d at 528.

[5] There is an additional reason why the other elements of the DMCA safe harbors need not be relitigated. Because these requirements were actually litigated and decided in *Davis* by counsel representing Harrington in this action, and Harrington's interests in this case are completely aligned with Mr. Davis' in the prior action, it is proper to deem those matters established. Indeed, in seeking leave to pursue his case as a class action in *Davis*, Mr. Davis mentioned Harrington's name ten times in the proposed complaint, *Davis*, ECF No. 41, confirming that he understood himself to be "acting in a representative capacity" for Harrington, *see Mendoza v. Amalgamated Transit Union Int'l*, 30 F.4th 879, 887-88 (9th Cir. 2022). Given that, Mr. Harrington and his counsel should be estopped from relitigating those same matters anew.

Dated: June 17, 2024

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: */s/ David H. Kramer*

David H. Kramer
dkramer@wsgr.com
Thomas R. Wakefield
twakefield@wsgr.com
Andrew T. Kramer
akramer@wsgr.com
Qifan Huang
qhuang@wsgr.com

*Counsel for Defendant*