1  DAVID H. KRAMER, SBN 168452
    Email: dkramer@wsgr.com
2  WILSON SONSINI GOODRICH & ROSATI
    Professional Corporation
3  650 Page Mill Road
    Palo Alto, CA 94304-1050
4  Telephone: (650) 493-9300

5  *Counsel for Defendant*
    *PINTEREST, INC.*

6

7                          UNITED STATES DISTRICT COURT

8                         NORTHERN DISTRICT OF CALIFORNIA

9                                  SAN JOSE DIVISION

10

11  MAUREEN HARRINGTON, as the                )   CASE NO.: 5:20-cv-05290-EJD
     representative of the Estate of Blaine Harrington  )
12  III, and HAROLD DAVIS, on behalf of       )   **DEFENDANT PINTEREST, INC.'S**
     themselves and others similarly situated, )   **REPLY SEPARATE STATEMENT**
13                                             )   **IN SUPPORT OF MOTION FOR**
                    Plaintiffs,                )   **SUMMARY JUDGMENT**
14                                             )
            v.                                 )   Date: July 17, 2025
15                                             )   Time: 9:00 a.m.
     PINTEREST, INC.,                          )   Courtroom: 4, 5th Floor
16                                             )   Judge: Hon Edward J. Davila
                    Defendant.                 )
17                                             )
                                               )
18                                             )
                                               )
19  _____)

20

21

22

23

24

25

26

27

28

1  Pursuant to Federal Rule of Civil Procedure 56 and Section V(B)(1) of this Court's
2  Standing Order for Civil Cases, Defendant Pinterest, Inc. ("Pinterest") submits the following Reply
3  Separate Statement in support of its Motion for Summary Judgment.:

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence | Moving Party's Reply to Opposing Party's Response |
|---|---|---|---|
| **Affirmative Defense: Digital Millennium Copyright Act Safe Harbors** | | | |
| Background | **Fact 1:** The Third Amended Complaint asserts a single claim for direct copyright infringement based on Pinterest's alleged display of the photograph "Waikiki Beach, Honolulu, Oahu, Hawaii, USA" via a Pinterest notification message dated July 29, 2020.<br><br>ECF No. 88 (Third Amended Complaint) ¶ 31 & Image 1. | **Disputed.** The Third Amended Complaint is a class action on behalf of a putative class. It is on behalf of the Estate of Blaine Harrington (as the proposed class representative) and all other similarly situated. The direct copyright infringement discussed in paragraph 31 is just an example of the many instances of infringement by Pinterest.<br><br>ECF No. 88 (Third Amended Complaint) ¶¶ 22-58. | **The proposition is undisputed.** It is irrelevant for purposes of Pinterest's summary judgment motion that Plaintiff purports to bring this action on behalf of a putative class of copyright owners. Plaintiff does not dispute that the Third Amended Complaint asserts a single claim for direct infringement of one work-in-suit that is allegedly owned by Plaintiff. |
| | **Fact 2:** Pinterest has asserted an affirmative defense based on the safe harbors of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(c) and § 512(d).<br><br>ECF No. 102 at 9. | **Undisputed.** | **Deemed admitted.** |
| | **Fact 3:** The DMCA safe harbors shield online services from liability for claims of copyright infringement provided they satisfy the statute's threshold | **Disputed.** This is a legal statement and not a fact. Fact 3 is also an incomplete, edited | **The proposition is undisputed.** Plaintiff does not dispute that Fact 3 accurately sets forth the |

| | | | |
|---|---|---|---|
| | requirements [*see* 17 U.S.C. §§ 512(c)(1)-(2), 512(d)(1), 512(i)(1)] and provided the claim arises "by reason of the storage" of the allegedly infringing material on the online service at the direction of a user, 17 U.S.C. § 512(c)(1), and/or "by reason of [the online service] referring or linking users" to the material, 17 U.S.C. § 512(d)(1).<br><br>*Davis v. Pinterest, Inc.*, 601 F. Supp. 3d 514 (N.D. Cal. 2022), *aff'd*, 2023 WL 5695992 (9th Cir. Sept. 5, 2023). | quotation of the relevant statute.<br><br>17 U.S.C. §§ 512(c), 512(d). | at-issue DMCA safe harbors. |
| **The Pinterest Platform** | | | |
| The Pinterest Platform | **Fact 4:** Pinterest operates an online service that enables users to upload and share content, including photographs.<br><br>Declaration of David H. Kramer in Support of Pinterest's Motion for Summary Judgment ("Kramer Decl."), Ex. J ("Lien Decl.") ¶ 5; *id.* Ex. K ("DeChant Decl. I") ¶¶ 2-3, 7; *Davis*, 601 F. Supp. 3d at 518. | **Disputed.** Pinterest determines what content, including photographs, to share. Pinterest also modifies the original content that users upload. The images displayed on Pinterest's platform and distributed beyond Pinterest's platform are not the original images that users uploaded, but rather derivative works that Pinterest created and internally call "variants."<br><br>June 5, 2025 Declaration of Michael Reese ("Reese Decl.") at Exhibit 1 | **The proposition is undisputed.** Harrington's response is non-responsive. It cites no evidence to dispute that Pinterest's online service enables users to upload and share content, including photographs. It is irrelevant for purposes of Fact 4 that Pinterest transcodes user-uploaded content in the ordinary operation of its service. *See* Reply at 5; *Davis v. Pinterest, Inc.*, 601 F. Supp. 3d 514, 532 (N.D. Cal. 2022).<br><br>Pinterest objects to Harrington's Exhibits 2 and 13 as hearsay and |

| | | | |
|---|---|---|---|
| | | (Deposition Transcript of Nicolas DeChant ("DeChant Tr.") at 31:18-32:13; 43:23-44:5); Exhibit 2 (Pinterest users complaining that Pinterest is changing and modifying Pins); Exhibit 13 (International Photo Telecommunications Counsel ("IPTC") test results showing Pinterest removed embedded copyright management information from images). | lacking authentication. Reply at 4 n.1. |
| | **Fact 5:** The process by which users upload content to Pinterest is initiated exclusively by Pinterest users.<br><br>DeChant Decl. I ¶ 4; Kramer Decl. Ex. C (N. DeChant Deposition) at 31:1-17; *Davis*, 2023 WL 5695992, at \*1. | **Disputed.** Pinterest modifies and alters content that is uploaded by Pinterest users, including, but not limited to copyright management information.<br><br>Reese Decl. at Exhibit 1 (Transcript of Nick DeChant at 31:18-32:13; 43:23-44:5); Exhibit 2 (Pinterest users complaining that Pinterest is changing and modifying Pins); Exhibit 13 (IPTC test results showing Pinterest removed embedded copyright management information from images). | **The proposition is undisputed.** While Harrington purports to dispute Fact 5, he does not offer any evidence showing that Pinterest, rather than users, upload content to Pinterest's service.<br><br>It is irrelevant for purposes of Fact 5 that Pinterest transcodes user-uploaded content in the ordinary operation of its service. *See* Reply at 5.<br><br>Pinterest objects to Harrington's Exhibits 2 and 13 as hearsay and lacking authentication. Reply at 4 n.1. |

| | **Fact 6:** Except for circumstances not relevant to this case in which Pinterest has requested custom content from certain content creators, Pinterest does not direct or encourage its users to upload any particular content.<br><br>DeChant Decl. I ¶¶ 2, 4; *Davis*, 2023 WL 5695992, at *1. | **Disputed.** Pinterest recommends the content for its users to post to Pinterest and encourages its users to post not their own original content, but the works of others, which then become Pinterest's owned and controlled content.<br><br>Reese Decl. Exhibit 9 ("Pinterest – Copyright Made Cool" by Bob Vishneski); Exhibit 10 (Pinterest Terms of Service) ("By providing any User Content on the Service, you grant us and our affiliates and service providers, and our users, a non-exclusive, royalty-free, transferable, sublicensable, worldwide license to use, store, publicly perform or display, reproduce, save, ***modify, create derivative works, monetize, download, translate and distribute your User Content, including for the purpose of promoting and redistributing part or all of the Pinterest Service.***") (emphasis added). | **The proposition is undisputed.** Harrington's response offers no evidence showing Pinterest directed or encouraged users to upload particular content, much less the lone allegedly infringing Harrington photo identified in the Third Amended Complaint. ECF No. 88 ¶ 31 & Image 1.<br><br>Neither of Harrington's exhibits supports Harrington's assertion that Pinterest "recommends" or "encourages" uploading of certain content or that user-uploaded content "become[s] Pinterest's owned and controlled content." Pinterest objects to Exhibit 9 as hearsay and lacking authentication. Reply at 4 n.1.<br><br>Regardless, Fact 6 was offered to show that Pinterest's users, rather than Pinterest itself, determine what content is uploaded to the service, and Harrington waived any argument that Pinterest should be disqualified from the DMCA's safe harbors because it encouraged or directed the uploading of Harrington's copyrighted works to Pinterest. Opp'n 10. Indeed, Plaintiff's |

| | | | opposition brief does not cite Exhibits 9 or 10 at all. Any dispute as to Fact 6 is immaterial. Reply at 3-4. |
|---|---|---|---|
| | **Fact 7:** Pinterest uses fully automated processes for copying, formatting, and displaying content that is stored on Pinterest's system at the direction of users.<br><br>DeChant Decl. I ¶¶ 2, 4, 8-11. | **Disputed.** Pinterest modifies and alters content that is uploaded by Pinterest users and displays that content outside of its Platform, not at the direction of users.<br><br>Reese Decl. at Exhibit 1 (Transcript of Nick DeChant at 31:18-32:13; 43:23-44:5); Exhibit 2 (Pinterest users complaining that Pinterest is changing and modifying Pins); Exhibit 3; Exhibit Exhibit 13 (IPTC test results showing Pinterest removed embedded copyright management information from images); Reese Decl. Exhibit 10 (Pinterest Terms of Service) ("By providing any User Content on the Service, you grant us and our affiliates and service providers, and our users, a non-exclusive, royalty-free, transferable, sublicensable, worldwide license to use, store, publicly perform or display, reproduce, save, | **The proposition is undisputed.** Harrington's response is a *non sequitur*. Harrington does not dispute that Pinterest's processes for copying, formatting, and displaying user-uploaded content are fully automated.<br><br>Further, Pinterest's notifications do not display user-uploaded content "outside of its Platform" as Harrington asserts. *See* Facts 15-18.<br><br>Pinterest objects to Harrington's Exhibits 2 & 13 as hearsay and lacking authentication. Reply at 4 n.1. |

| | | | |
|---|---|---|---|
| | | *modify, create derivative works, monetize, download, translate and distribute your User Content, including for the purpose of promoting and redistributing part or all of the Pinterest Service.*") (emphasis added). | |
| **Pinterest Meets the DMCA's Threshold Requirements for Safe Harbor Protection** <br> **CONTESTED BY PLAINTIFF** | | | |
| Pinterest is a "service provider." 17 U.S.C. § 512(k)(1)(B). | *See supra* Fact 4. | Undisputed. | Deemed admitted. |
| Pinterest has a "designated agent" to receive "notifications of claimed infringement." 17 U.S.C. § 512(c)(2). | **Fact 8:** Pinterest has maintained a formally-registered designated agent with the United States Copyright Office to receive notifications of claims infringement. <br><br> Lien Decl. ¶ 10; Kramer Decl. Exs. B (H. Lien 30(b)(6) Deposition) at 58:17-59:2, E-H. | Undisputed. | Deemed admitted. |
| | **Fact 9:** Pinterest has made publicly available on its website the contact information for its DMCA agent. <br><br> Lien Decl. ¶ 10 & Ex. 4. | Undisputed. | Deemed admitted. |
| Pinterest has adopted, | **Fact 10:** Pinterest adopted and publicly | Undisputed. | Deemed admitted. |

| | | | |
|---|---|---|---|
| communicated, and implemented a repeat-infringer policy. 17 U.S.C. § 512(i)(1)(A). | informed users of its repeat-infringer policy.<br><br>Lien Decl. ¶¶ 16-20 & Exs. 4, 6; Kramer Decl. Ex. B (H. Lien 30(b)(6) Deposition) at 40:22-42:2, 42:3-44:5. | | |
| | **Fact 11:** Pinterest enforces its repeat infringer policy, including by terminating approximately 1,000 users between October 20, 2019 and November 20, 2019 alone.<br><br>Lien Decl. ¶¶ 19-20. | **Undisputed.** | **Deemed admitted.** |
| Pinterest "accommodates and does not interfere with standard technical measures." 17 U.S.C. § 512(i)(1)(B). | **Fact 12:** Pinterest is unaware of any technical measures that are used by copyright owners to identify or protect copyright works and that (1) have been developed pursuant to a broad consensus of copyright owners and service providers; (2) are available to any person on reasonable and nondiscriminatory terms; and (3) do not impose substantial costs on service providers or substantial burdens on their systems or networks.<br><br>Lien Decl. ¶ 21. | **Disputed.**<br><br>Reese Decl., Exhibit 14 (Pinterest website linking to the IPTC's Metadata Standard used by photographers to identify and protect their copyright protected works); Reese Decl. Exhibit 13 (IPTC test results of showing that Pinterest stripped this copyright management information from photographs on the Pinterest platform); Reese Decl., Exhibit 1 (Transcript of Nick DeChant at 31:18-32:13; 43:23-44:5) | **The proposition is undisputed.** Harrington's response— which lacks any supporting argument as to its significance— fails to provide evidence sufficient to raise a genuine issue of material fact.<br><br>Regardless, Fact 12 was offered to show that Pinterest does not interfere with any "standard technical measures," and Harrington's opposition brief waived any argument that Pinterest should be disqualified from the DMCA's safe |

| | | | |
|---|---|---|---|
| | | (discussing Pinterest conduct with respect to IPTC Metadata Standard). | harbors for failure to accommodate "standard technical measures." *See* Opp'n 10; ECF 109 at 11. Indeed, Harrington's opposition does not cite Exhibits 13 or 14 at all. Any dispute as to Fact 12 is immaterial. Reply at 3-4.<br><br>Pinterest objects to Harrington's Exhibit 13 as hearsay and lacking authentication. Reply at 4 n.1. |
|  | **Pinterest's Notification Messages Fall Within the DMCA Safe Harbors 512(c) & 512(d)**<br>**CONTESTED BY PLAINTIFF** | | |
| Plaintiff's claim of infringement arises "by reason of the storage at the direction of a user" 17 U.S.C. § 512(c)(1), and "by reason of the provider referring or linking users," *id.* § 512(d). | **Fact 13:** One of the ways by which Pinterest facilitates access to content that users store on Pinterest's computer system is through notification messages.<br><br>DeChant Decl. I ¶ 18. | **Disputed.** Pinterest embeds copyrighted images into emails and app notifications that Pinterest sends *outside* of Pinterest's website in order to entice user engagement *on* its website, ultimately to increase Pinterest's advertisement revenue.<br><br>Reese Decl. Exhibit 6; Reese Decl. Exhibit 3; Reese Decl. Exhibit 15 (examples of notifications that advertise both Pinterest and third-parties). | **The proposition is undisputed.** Whether Pinterest's notification messages are sent "outside of Pinterest's website," whatever that means, is irrelevant for purposes of Fact 13. What matters for purposes of applying the safe harbor is the stated proposition.<br><br>Pinterest objects to Plaintiff's Exhibit 15 as lacking authentication. Reply at 4 n.1. |
| | **Fact 14:** Pinterest empowers users to decide if they want notification | **Disputed.** Pinterest, not the user, created and controlled all of | **The proposition is undisputed.** Harrington's response is |

PINTEREST'S REPLY SEPARATE STATEMENT    -8-    CASE NO.: 5:20-CV-05290-EJD

| | | | |
|---|---|---|---|
| | messages and how to receive them—either by email or through the Pinterest mobile application.<br><br>DeChant Decl. I ¶ 18; Kramer Decl. Ex. A (K. Kim 30(b)(6) Deposition) at 48:10-49:17; *Davis*, 601 F. Supp. 3d at 527. | its automated systems that tracked its users' interactions with Pinterest's website, then actively sent out notifications displaying variants of copyrighted works outside its website to draw users to the website.<br>Reese Decl. Exhibit 6; Reese Decl. Exhibit 3. | a *non sequitur*. While it is untrue that notifications "display[] variants . . . outside [Pinterest's] website," that issue is irrelevant for purposes of Fact 14. *See* Facts 15-18. Harrington does not dispute that Pinterest allows users to decide if they want notification messages and how to receive them. |
| | **Fact 15:** Pinterest's notification messages are composed of hyperlinks that point back to images that reside on Pinterest's online platform and are hosted on Pinterest's computer system.<br><br>ECF No. 88 ¶ 24; Kramer Decl. Exs. D (*Davis* Response to Interr. No. 8); A (K. Kim 30(b)(6) Deposition) at 40:2-43:24, 69:10-70:1, 73:14-74:4, 82:6-9; *Davis*, 601 F. Supp. 3d at 527. | **Disputed.** Plaintiff's current employee does *not* state that Pinterest's notifications use only hyperlinks. To the contrary, he states, "the notification messages merely contain ***links*** to images that users have uploaded to Pinterest's service that are stored on Pinterest's computer system." Declaration of Nicholas DeChant, ECF No. 109-20, at ¶5 (emphasis added).<br><br>Pinterest's app notifications do not use hyperlinks, and push notifications automatically display thumbnails of images of Pinterest's variants. Emails notifications also display images automatically. | **The proposition is undisputed.** Harrington does not dispute that Pinterest's notifications contain links that point back to images that reside on Pinterest's online platform and are hosted on Pinterest's computer system.<br><br>Harrington's argument that links in Pinterest's notifications are not "hyperlinks" is specious. Mr. DeChant's use of shorthand for hyperlinks in his declaration does not create a triable issue of fact. There is no dispute regarding how the links in Pinterest's notifications function, and the record is clear that Pinterest's notifications, including in-app notifications, use hyperlinks (or "links") to point to images stored on |

| | | | Reese Decl. Exhibit 7, Exhibit 8 Exhibit 15 (examples of notifications with images automatically displayed). | Pinterest's computer system. *See, e.g.*, ECF No. 88 ¶ 24; ECF 109-1, Ex. D (*Davis* Response to Interr. No. 8).<br><br>While it is also immaterial whether notifications "automatically" display images, Pinterest refers to Fact 18. Further, push notifications are irrelevant to the single alleged infringement at issue in this case, which was sent via email. ECF No. 88 ¶ 31 & Image 1.<br><br>Pinterest objects to Harrington's Exhibit 7 as irrelevant, hearsay, and lacking authentication. Reply at 4 n.1. |
|---|---|---|---|---|
| | | **Fact 16:** Pinterest's notifications do not themselves contain copies of the images to which they link.<br><br>Kramer Decl. Exs. D (*Davis* Response to Interr. No. 8); A (K. Kim 30(b)(6) Deposition) at 40:2-43:24, 69:10-70:1, 73:14-74:4, 82:6-9; *Davis*, 601 F. Supp. 3d at 527. | **Disputed.** Links in Pinterest's notifications can and do open automatically.<br><br>Declaration of Nicholas DeChant, ECF No. 109-20, at ¶5; Reese Decl. Exhibit 7; Exhibit 8; Exhibit 15 (examples of notifications with images automatically displayed). | **The proposition is undisputed.** Harrington's response is a *non sequitur*. It is undisputed that notifications do not contain copies of images. Whether the links in notifications open automatically, a different proposition from the one asserted, is immaterial. *See* Fact 18.<br><br>Regardless, Pinterest objects to Harrington's Exhibit 15 as lacking authentication. Pinterest objects to Exhibit 7 as hearsay and lacking |

| | | | authentication. Reply at 4 n.1. Further, the operation of Gmail and Outlook messages is not relevant. The only alleged infringement at issue in this case was sent to Harrington at a comcast.net address, without any showing of a connection to either Gmail or Outlook. |
|---|---|---|---|
| | **Fact 17:** Prior to the filing of this lawsuit in July 2020, the images on the Pinterest service were, with the exception of rare cases not at issue here, uploaded to the Pinterest service by users. DeChant Decl. I ¶ 2; Kramer Decl. Ex. B (H. Lien 30(b)(6) Deposition) at 74:20-75:2; Declaration of Nick DeChant in Support of Pinterest's Motion for Summary Judgment, dated March 31, 2025 ("DeChant Decl. II") ¶ 2. | **Disputed.** The images displayed on Pinterest service are not the images uploaded by users. Rather, the images are derivatives (which Pinterest internally calls variants). Reese Decl. Exhibit 1 (DeChant Tr.) at 31:18-32:13; 43:23-44:5. | **The proposition is undisputed.** Harrington's response is non-responsive. Pinterest's creation of transcoded variants of the files its users upload to the service is a separate issue from who—Pinterest's users or Pinterest itself—originally uploaded the image. Regardless, Harrington waived in his opposition brief any argument that Pinterest should be disqualified from the DMCA's safe harbors because it, rather than its users, uploaded the allegedly infringing content to its service. *See* Opp'n 10. Any dispute as to Fact 17 is immaterial. Reply at 3-4. |
| | **Fact 18:** If a user opens a notification message and has their software configured to display images, assuming no | **Disputed.** Links in Pinterest's notifications can and do open automatically. | **The proposition is undisputed.** Whether links in Pinterest's notifications "automatically" display the linked-to images is |

| | | | |
|---|---|---|---|
| | technical difficulties, the user's software will call Pinterest's computer system for the images linked to in the notification message and Pinterest will transmit the images to the user's computer for display through the same process as a user visiting Pinterest's website using a web browser would request, receive and display an image from Pinterest's computer system.<br><br>DeChant Decl. II ¶ 6. | Declaration of Nicholas DeChant, ECF No. 109-20, at ¶5; Reese Decl. Exhibits 7, Exhibit 8; Exhibit 15 (examples of notifications with images automatically displayed). | not responsive and is immaterial. Regardless, Harrington has offered no evidence to create a triable issue of fact regarding the prerequisite conditions necessary for a display to occur (e.g., that the user's software is configured to display images and encounters no technical difficulties). Further, the declaration to which Exhibit 15 is attached does not attest that the images shown in Exhibit 15 "open[ed] automatically."<br><br>Pinterest objects to Harrington's Exhibit 15 as lacking authentication. Pinterest objects to Exhibit 7 as hearsay and lacking authentication. Reply at 4 n.1. Further, the operation of Gmail and Outlook messages is not relevant. The only alleged infringement at issue in this case was sent to Harrington at a comcast.net address, without any showing of a connection to either Gmail or Outlook. |
| | **Fact 19:** The entire notification process from Pinterest's perspective— from determination of whether a user has requested to receive notifications, to determination of the | **Disputed.** Pinterest, not the user, created and controlled all of its automated systems that tracked its users' interactions with Pinterest's website, | **The proposition is undisputed.** Harrington does not dispute that Pinterest's notification process is fully automated. Indeed, Harrington admits that Pinterest uses |

| | | | |
|---|---|---|---|
| | links to include in a notification message to delivery of the notification—is fully automated.<br><br>DeChant Decl. I ¶ 18; *see Davis*, 601 F. Supp. 3d at 520. | then actively sent out notifications displaying variants of copyrighted works outside its website to draw users to the website.<br><br>Reese Decl. Exhibit 3; Exhibit 6; Exhibit 4 (Deposition Transcript of Kevin Kim) at 82:22-83:3; 84:2-85:23 (testifying that all algorithms for notifications are internal to Pinterest). | "automated systems." Harrington's alternative proposition in response is a *non sequitur*.<br><br>Pinterest's notifications do not display user-uploaded content "outside of its website" as Harrington asserts. *See* Facts 15-18. |
| | **Fact 20:** Pinterest's machine-learning algorithms determine which links to include in notifications based on what images the algorithms identify as being of potential interest to the recipient based on factors including the recipient's past activity on Pinterest.<br><br>DeChant Decl. I ¶ 18; *Davis*, 601 F. Supp. 3d at 527. | **Undisputed** to the extent that Pinterest, not the user, created and controlled all of its automated systems that tracked its users' interactions with Pinterest's website, then actively sent out notifications displaying variants of copyrighted works outside its website to draw users to the website.<br><br>**Undisputed** to the extent that user's interactions with Pinterest's platform are not the sole basis for Pinterest selecting the variants displayed in Pinterest's notifications sent outside Pinterest's platform. | **The proposition is undisputed.** Harrington disputes Fact 20 only to the extent that it "implies that links in Pinterest's notifications do not display images automatically." That is non-responsive. *See* Fact 18.<br><br>Pinterest objects to Harrington's Exhibit 7 as hearsay and lacking authentication. Pinterest objects to Exhibit 15 as lacking authentication. Reply at 4 n.1.<br><br>The Court need not engage with the remainder of Harrington's response because he fails to cite any evidence in support thereof. Still, Pinterest disagrees with |

| | | | |
|---|---|---|---|
| | | **Disputed** to the extent that Fact 20 implies that links in Pinterest's notifications do not display images automatically. Declaration of Nicholas DeChant, ECF No. 109-20, at ¶5; Reese Decl. Exhibits 7; 8; Exhibit 15 (examples of notifications with images automatically displayed). | Harrington's mischaracterization of supposedly "undisputed" aspects of Fact 20. For example, Pinterest's notifications do not display user-uploaded content "outside its website" as Plaintiff asserts. *See* Facts 15-18. |
| **Harrington Cannot Demonstrate Exceptions to the DMCA Safe Harbors Apply** <br> **CONTESTED BY PLAINTIFF** | | | |
| Harrington cannot demonstrate that Pinterest failed to act "expeditiously to remove, or disable access to, [his] material" either when it received a proper DMCA takedown notice (17 U.S.C. § 512(c)(1)(C)), or when it had actual or red-flag knowledge of "specific knowledge of [the] particular infringing activity" (*id.* § 512(c)(1)(A)(i)-(iii)). | **Fact 21**: Blaine Harrington III never sent Pinterest a takedown notice under the Digital Millennium Copyright Act identifying allegedly infringing material on the Pinterest service or otherwise sent communications to Pinterest apart from filing this lawsuit. <br><br> Kramer Decl. Exs. M (Pl.'s Resps. to Pinterest's First Set of Interrogs. No. 10) & N (Pl.' Resps. to Pinterest's First Set of RFPs No. 9-10). | **Undisputed.** | **Deemed admitted.** |

| | | | |
|---|---|---|---|
| | **Fact 22**: Because Pinterest hosts "billions" of pieces of content, it "does not" and "could not[] manually review the content that users choose to store on its computer network." <br><br>DeChant Decl. I ¶ 7; *Davis*, 601 F. Supp. 3d at 518. | **Disputed.** Reese Decl. Ex 12 ("We enforce our policies through automated tools, ***manual review*** and hybrid approaches that combine elements of both.") (emphasis added). | **The proposition is undisputed.** Harrington cites no evidence to show that Pinterest manually reviews the content users upload, much less that it manually reviewed any uploaded content that allegedly infringes one of Harrington's copyrights. The document Harrington cites speaks to Pinterest enforcing policies through manual review, not reviewing content that users upload.<br><br>Regardless, Fact 22 was offered to show that Pinterest lacked disqualifying knowledge of the alleged infringement at issue, and Harrington's opposition brief waived any argument that Pinterest had such knowledge of any alleged infringement of his copyrighted work. Opp'n 10. Indeed, Harrington's opposition does not cite Exhibit 12 at all. Any dispute as to Fact 22 is immaterial. Reply at 3-4. |
| Harrington cannot demonstrate that Pinterest "receive[d] a financial benefit directly attributable to" | *See supra* **Facts 5, 6, 7, 19, 20**<br><br>**Fact 23**: Pinterest's notification messages do not | **Disputed.** Pinterest's notifications promote Pinterest and its platform and include advertisements.<br><br>Reese Decl. Exhibit 3, Exhibit 6, Exhibit 15 | **The proposition is undisputed.** The record is clear that notifications do not include advertisements—i.e., Promoted Pins. It is irrelevant that some users |

| the alleged infringement of Harrington's work through notification messages, where Pinterest had the right and ability to control" the alleged infringement." 17 U.S.C. § 512(c)(1)(B); *id.* § 512(d)(2). | include advertisements. DeChant Decl. I ¶ 18; Kramer Decl. Ex. B (K. Kim 30(b)(6) Deposition) at 33:5-7, 44:7-12; *Davis*, 601 F. Supp. 3d at 527. | (examples of Pinterest notifications promoting Pinterest and including third-party ads). | who are *not* advertisers may create Pins of commercial goods. Regardless, this proposition was offered to show that Pinterest lacked a disqualifying direct financial benefit from the alleged infringement at issue, and Harrington's opposition brief waived any argument that Pinterest received such a direct financial benefit. Opp'n 10. Any dispute as to Fact 23 is immaterial. Reply at 3-4. Pinterest objects to Exhibit 15 as lacking authentication. Reply at 4 n.1. |

I attest that the evidence cited herein fairly and accurately supports or disputes the facts as asserted.

Dated: June 25, 2025

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: */s/ David H. Kramer*
      David H. Kramer
      dkramer@wsgr.com

*Counsel for Defendant PINTEREST, INC.*